**In re NGAN GUNG RESTAURANT, INC., Debtor.**

**NGAN GUNG RESTAURANT, INC., Plaintiff,**

v.

**PEOPLE OF the STATE OF NEW YORK by Dennis C. VACCO, Attorney General of the State of New York, Defendant.**

**Bankruptcy No. 95 B 40338 (JLG).**

**Adv. No. 95–9320A.**

United States Bankruptcy Court, S.D. New York.

June 29, 1995.

Steven E. Stein, New York City, for debtor.

Dennis C. Vacco, Atty. Gen. of State of N.Y., New York City, for defendant.

### MEMORANDUM DECISION

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Ngan Gung Restaurant, Inc., d/b/a the Silver Palace Restaurant ("debtor"), commenced this adversary proceeding for a declaratory judgment that an action brought pursuant to New York State Executive Law § 63(12) entitled *People of the State of New York by Dennis C. Vacco, Attorney General of the State of New York v. Ngan Gung Corporation, d/b/a Silver Palace Restaurant* (the "Action") is subject to the automatic stay of § 362(a)(1) of the Bankruptcy Code ("Code") and to enjoin the continued prosecution of the Action pursuant to Bankruptcy Rule 7065 and/or § 105 of the Code. Debtor has moved for a preliminary injunction. The Attorney General of the State of New York (the "Attorney General") objects to that relief arguing, among other things, that the Action is excepted from the stay pursuant to § 362(b)(4) of the Code. By agreement debtor's motion was stayed pending our determination of that issue. As stated below, we find that the exception is applicable.[1]

### Facts

The facts are not disputed. Debtor owns and operates a restaurant located in New York City. On or about January 27, 1995, it filed a chapter 11 petition. Pursuant to §§ 1107 and 1108 of the Code, debtor has remained in possession and control of its restaurant as debtor-in-possession.

In February 1994, the Attorney General received a complaint from waiters and busboys at debtor's restaurant that between January 1990 and April 1993, management demanded and received a portion of the waiters' tips and failed to pay proper overtime wages. As authorized by Executive Law § 63(12)[2], the Attorney General began an investigation of the debtor. To that end,

---

[1] Our subject matter jurisdiction of this adversary proceeding is predicated on 28 U.S.C. §§ 1334(b) and 157(a), and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A).

[2] Executive Law § 63(12) states that the Attorney–General shall:

Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages and, in an appropriate case, cancelling any certificate filed under and by virtue of the provisions of section four hundred forty of the former penal law or section one hundred thirty of the general business law, and the

representatives of the Attorney General deposed Richard Chan, debtor's principal, interviewed waiters, busboys and dim sum workers at the restaurant, and reviewed extensive payroll records submitted by debtor and the employees. Based on the information obtained through that investigation, the Attorney General determined that between January 1990 and April 1993, debtor demanded and accepted a total of $271,017.00 in tips from its waiters and busboys and underpaid $2,255.24 in overtime wages in violation of New York State Labor Law. On or about May 8, 1995, the Attorney General commenced the Action by filing a Notice of Petition and Petition (the "Petition") against debtor in New York State Supreme Court, New York County.[3]

On or about May 23, 1995, debtor's counsel, Steven E. Stein, Esq., telephoned Brand to inform her that debtor had filed its chapter 11 petition and that debtor believed the commencement and continued prosecution of the Action violated § 362(a)(1) of the Code. He requested that the Action be withdrawn. Brand responded that the Attorney General viewed the Action as excepted from the stay pursuant to § 362(b)(4) and that she would not withdraw it. On or about June 5, 1995, debtor commenced this adversary proceeding.

### Discussion

 Section 362(b)(4) of the Code states that the filing of a bankruptcy petition "does not operate as a stay ... of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4). To the extent that the governmental unit obtains a judgment pursuant to its police or regulatory powers, other than a money judgment, § 362(b)(5) excepts the enforcement of that judgment from the stay. *See* 11 U.S.C. § 362(b)(5). Accordingly,

> where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6299. Courts apply the pecuniary purpose and public policy tests, to determine whether particular litigation falls within the police or regulatory power exception. *See, e.g., NLRB v. Continental Hagen Corp.,* 932 F.2d 828, 833–34 (9th Cir.1991); *Word v. Commerce Oil Co. (In re Commerce Oil Co.),* 847 F.2d 291, 295 (6th Cir.1988); *In re Chateaugay Corp.,* 115 B.R. 28, 31 (Bankr. S.D.N.Y.1988). The pecuniary purpose test focuses on whether the governmental action "relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters relating to public safety". *In re Commerce Oil Co.,* 847 F.2d at 295. "Those proceedings that relate primarily to matters of public safety are excepted from the stay." *Id.* Under the public policy test, a court must determine whether the proceedings seek to effectuate public policy, or merely are being brought to adjudicate private rights. *Id.* "Those proceedings that effectuate a public policy are excepted from the stay." *Id.*

Litigation by governmental units to enforce federal and state labor laws uniformly has been excepted from the stay under § 362(b)(4). The exception has been applied to actions seeking to enjoin, or assess penalties on account of, improper labor practices and to cause employers to make restitution

court may award the relief applied for or so much thereof as it may deem proper....

In connection with any such application, the attorney general is authorized to take proof and make a determination of the relevant facts and to issue subpoenas in accordance with the civil practice law and rules. Such authorization shall not abate or terminate by reason of any action or proceeding brought by the attorney general under this section.

N.Y.Executive Law § 63(12) (McKinney 1994).

**3.** Assistant Attorney General Jennifer S. Brand is in charge of the Action for the state. A copy of the Petition and supporting affidavits and the Supporting Memorandum of Law were submitted as Exhibits A and B, respectively, to the affidavit she submitted in opposition to debtor's preliminary injunction motion.

payments to employees. The courts reason that those kinds of actions promote public policy by protecting legitimate businesses from unfair competition, and that they are neither intended to adjudicate private rights, nor calculated to advance the government's pecuniary interests. *See, e.g., Eddleman v. United States Department of Labor*, 923 F.2d 782 (10th Cir.1991) (action by United States Department of Labor ("DOL") to enforce minimum wage and fringe benefit provisions of Service Contract Act ("SCA") by seeking debarment and liquidation of employee back pay claims falls within § 362(b)(4) because those remedies prevent unfair competition in markets by companies paying substandard wages and further policies underlying SCA); *Brock v. Rusco Industries Inc.*, 842 F.2d 270 (11th Cir.) (action by DOL to enforce Fair Labor Standards Act excepted from stay; the Act promotes public policy by protecting legitimate businesses from unfair competition and ensuring that debtor's employees will receive minimum wages), *cert. denied*, 488 U.S. 889, 109 S.Ct. 221, 102 L.Ed.2d 212 (1988); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir.1986) (proceedings by National Labor Relations Board to enjoin unfair labor practices and collect compensatory damages within governmental regulatory exception because the Board adjudicates violations of federal labor law and thereby promotes the law's underlying policies); *EEOC v. Rath Packing Co.*, 787 F.2d 318 (8th Cir.) (employment discrimination action brought by Equal Employment Opportunity Commission to recover back pay held to fall within governmental regulatory exception because in vindicating individual interests, the Commission also protects the public interest in preventing employment discrimination and keeps the public from being harmed by such conduct), *cert. denied*, 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986); *In re Dervos*, 37 B.R. 731 (Bankr.N.D.Ill.1984) (action by State of Illinois to enforce state wage collection statute falls within § 362(b)(4) because action protects non-governmental employees from being denied wages owed them, prevents repetition of fraudulent behavior by non-governmental employers and deters other non-governmental employers from depriving employees of wages); *In re Kawano, Inc.*, 27 B.R. 855 (Bankr.S.D.Cal.1983) (action by State of California to enforce state labor laws and liquidate back-pay claim covered by regulatory exception to automatic stay because it furthers legitimate public policy of preventing unfair labor practices).[4] The Second Circuit has applied § 362(b)(4) in labor

---

4. Debtor misplaces its reliance on *In re Bennett Paper Corp.*, 63 B.R. 8 (Bankr.E.D.Mo.1985), a case it views as "roughly on all fours with the instant proceeding". The *Bennett* court held that to the extent that an EEOC complaint for alleged violations of the Age Discrimination in Employment Act sought injunctive relief, it was excepted from the stay by § 362(b)(4). *Id.* at 11. It held that the stay did apply to sections of complaint seeking an order compelling debtor to make all persons adversely affected by its employment practices whole and seeking back pay, liquidated damages, interest, costs and fees, because such relief protected only the aggrieved individual's pecuniary interest. *Id.* at 11–12. However, that decision effectively was overruled by *EEOC v. Rath Packing Corp.*, 787 F.2d 318. The decisions in *In re Ross*, 83 B.R. 673 (Bankr.E.D.Mo.1988), *rev'd on other grounds*, 104 B.R. 171 (E.D.Mo. 1989), *In re Advanced Professional Home Health Care, Inc.*, 82 B.R. 837 (Bankr.E.D.Mich.1988) and *In re Greenwald*, 34 B.R. 954 (Bankr. S.D.N.Y.1983), cited by debtor, are inapposite. In each case the court rejected the contention that § 362(b)(4) applied, and the government, as creditor, not regulator, was stayed from taking action to collect money owed it by the debtor. *See In re Ross*, 83 B.R. 673 (efforts by state to collect unemployment compensation overpayments); *In re Advanced Professional Home Health Care, Inc.*, 82 B.R. 837 (Secretary of Department of Health and Human Services stayed from withholding medicare reimbursement funds due the debtor; Secretary withheld them as recoupment for alleged overpayment); *In re Greenwald*, 34 B.R. 954 (New York State Department of Health stayed from prosecuting consolidated administrative audit proceeding to determine alleged overpayment of medicaid reimbursement funds). Similarly, *In re Chateaugay Corp.*, 115 B.R. 28 (Bankr.S.D.N.Y.1988), is distinguishable. There the Court denied the Government's request for a declaration that its claims against the debtors under the False Claims Act were excepted from the stay by § 362(b)(4). In substance, it found that actions under the False Claims Act were calculated to promote the government's pecuniary interests. *Id.* at 31. It further found that allowing the action to proceed would not serve the public policy of deterring further violations of the law because the offending entity was out of business. *Id.* By contrast, the Attorney General is not attempting to further the state's pecuniary interests and the Action has deterrent value because debtor remains in business.

law related enforcement actions. *See NLRB v. 15th Ave. Iron Works, Inc.,* 964 F.2d 1336, 1337 (2d Cir.1992) (per curiam) (actions to redress unfair labor practices excepted from stay by § 362(b)(4)); *PBGC v. LTV Corp.,* 875 F.2d 1008, 1010 (2d Cir.1989) (Pension Benefit Guaranty Corporation's decision to restore full liability for pension benefit plans to debtor excepted from stay because action protects pension rights of debtor-in-possession's employees under Employee Retirement Income Security Act), *rev'd on other grounds and remanded,* 496 U.S. 633, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990). In *Martin v. Safety Electric Constr. Co.,* 151 B.R. 637 (D.Conn.1993), the court drew support from those cases in finding that a pre-petition action by the DOL to enjoin violations of provisions of the Fair Labor Standards Act mandating payment of overtime and to assess unpaid wages and liquidated damages was excepted from the automatic stay by § 362(b)(4). *See id.* at 638.

The Petition was filed on behalf of the people of the State of New York and the affected employees of debtor's restaurant. It alleges that between January 1990 and April 1993, debtor violated Labor Law § 196–d by demanding and accepting $271,017.00 in tips given to the restaurant's waiters by patrons. Petition ¶ 19. It further alleges that debtor violated 12 NYCRR § 137–1.3 by underpaying overtime wages to waiters in the amount of $2,255.24. Petition ¶ 20. The relief sought therein includes an injunction preventing debtor from further violations of those laws, restitution in the amount of unpaid tips (plus 25% of that amount in liquidated damages for willful failure to pay employees the full amount of tips collected) and unpaid overtime wages, plus costs pursuant to CPLR § 8303(a)(6).

Debtor contends that because the Action seeks to redress past violations of state law, no public policy end can be served through continued prosecution of the Action. Debtor's position overlooks the fact that courts have held otherwise. *See, e.g., Brock v. Rusco Industries, Inc.,* 842 F.2d 270 (action for back wages for employees for two weeks of work prior to bankruptcy filing); *In re Dervos,* 37 B.R. 731 (action to recover back wages where business was no longer operating); *In re Quinta Contractors, Inc.,* 34 B.R. 129 (Bankr.M.D.Pa.1983) (action for back pay under the Davis Bacon Act after projects had been completed). It also disregards that under Executive Law § 63(12), the Attorney General is empowered to seek injunctive relief even it the improper conduct has ceased because "voluntary discontinuance of improper or illegal activity is no assurance that such activity will not be resumed." *State v. Midland Equities of New York, Inc.,* 117 Misc.2d 203, 458 N.Y.S.2d 126, 128–29 (Sup.Ct.1982). *See also State by Lefkowitz v. Person,* 75 Misc.2d 252, 347 N.Y.S.2d 391, 393 (Sup.Ct. 1973) (proceeding brought by Attorney General pursuant to Executive Law § 63(12); although defendants claimed to have discontinued fraudulent conduct, injunction granted preventing defendants from misrepresenting job availability for paralegals and from offering money-back guarantee if students did not secure employment within certain time period); *State by Lefkowitz v. Hotel Waldorf-Astoria,* 67 Misc.2d 90, 323 N.Y.S.2d 917, 919 (Sup.Ct.1971) (proceeding brought by Attorney General pursuant to Executive Law § 63(12); although defendants had discontinued practice, injunction granted preventing defendants from adding surcharge to each customer bill for "sundries" without itemization, identification or explanation, regardless of whether the customer had actually used services represented by that term). Finally, debtor's construction of § 362(b)(4) ignores and undermines Congressional intent in enacting that section.

> Congress recognized ... that the stay provision was particularly vulnerable to abuse by debtors improperly seeking refuge under the stay in an effort to frustrate necessary governmental functions. To combat the risk that the bankruptcy court would become a sanctuary for wrongdoers, among others, Congress enacted the police and regulatory power exception to the automatic stay.

*United States v. Nicolet, Inc.,* 857 F.2d 202, 207 (3d Cir.1988); *see In re James,* 940 F.2d 46, 53–54 (3d Cir.1991); *State of New York v. N. Storonske Cooperage Co., Inc.,* 174 B.R. 366, 371 (N.D.N.Y.1994); *United States v. Seitles,* 106 B.R. 36, 38 (S.D.N.Y.1989).

Alternatively, debtor contends that the Action is akin to a private collection suit because New York State Labor Law vests employees with the right to sue their employer to recover unpaid tips and overtime wages. *See* Labor Law § 198(1–a).[5] That a private right of action may be available to aggrieved employees does not divest the state of a legitimate police or regulatory interest in enforcing its laws. By way of comparison, § 16(b) of the Fair Labor Standards Act accords employees a private right of action to enforce §§ 6 and 7 of the Act and thereby recover unpaid wages, unpaid overtime compensation, liquidated damages, attorney's fees and costs. *See* 29 U.S.C. § 216(b). Nonetheless courts routinely hold that enforcement actions brought by the DOL pursuant to §§ 6 and 7 of the Act are excepted from the stay by § 362(b)(4). *See, e.g., Martin v. Chambers,* 154 B.R. 664, 665 (E.D.Va.1992); *Martin v. Safety Electric Constr. Co., Inc.,* 151 B.R. at 638–39. Moreover, that the government seeks to liquidate employee wage claims or to compel employers to make restitution of unpaid funds, does not alter the fact that it is acting pursuant to its police and regulatory authority. Those enforcement measures further public policy by protecting employees and the markets from the harmful effects of unfair labor practices. Accordingly, numerous courts have held that government actions under both federal and state labor laws seeking remedies that were restitutionary in nature are excepted from the stay by § 362(b)(4). *See, e.g., Eddleman v. United States Department of Labor,* 923 F.2d at 791 (DOL's action to liquidate back pay claims on behalf of individual employees was not an assertion of private rights but rather another method of enforcing policies underlying Service Contract Act); *EEOC v. Rath Packing Co.,* 787 F.2d at 324–25 (EEOC actions on behalf of private individuals also vindicate the public interest in preventing employment discrimination). *See also Martin v. Chambers,* 154 B.R. 664 (action to redress violations of Fair Labor Standards Act by, among other things,

adjudicating defendant's liability for backwages excepted from stay); *Brock v. Arlmont Services, Inc.,* 67 B.R. 111 (D.Mass. 1986) (DOL action to enjoin violations of Fair Labor Standards Act and compel payment of back wages due employees excepted from stay by § 362(b)(4)); *In re Quinta Contractors, Inc.,* 34 B.R. at 130 (DOL's administrative proceeding to establish debtor's liability under Davis–Bacon Act, including liability on unpaid employee wages under the Act, excepted from the stay). Because the Attorney General is only seeking to liquidate the wage claims, debtor is incorrect that the employees are being accorded special consideration. *See Martin v. Safety Electric Constr. Co., Inc.,* 151 B.R. at 639 (in finding § 362(b)(4) exception to be applicable, court notes "that the individuals claiming unpaid wages will not receive any extra priority by virtue of [the enforcement] action. Actual collection of the back pay and liquidated damages claims must proceed according to normal bankruptcy procedures."). Moreover, the enforcement of basic work-place standards is part of the state's police powers to protect its citizens. "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety, and workmen's compensation laws are only a few examples." *De Canas v. Bica,* 424 U.S. 351, 356, 96 S.Ct. 933, 937, 47 L.Ed.2d 43 (1976); *see also Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 756, 105 S.Ct. 2380, 2397, 85 L.Ed.2d 728 (1985) (holding that National Labor Relations Acts does not preempt state's mandated-benefit law implementing state policy on mental health care as applied to a plan negotiated pursuant to collective bargaining agreement subject to Act).

New York State Labor Law § 196–d is entitled "Gratuities" and provides, in relevant part, that:

No employer or his agent or an officer or agent of an corporation or any other

---

5. Debtor cites Labor Law § 198(1–a) which provides:

In any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee reasonable attorney's fees and, upon a finding that the employer's failure to pay the wage required by this article was willful, an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due.

N.Y.Labor Law § 198(1–a) (McKinney 1994).

person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee.... Nothing in this subdivision shall be construed as affecting ... the sharing of tips by a waiter with a busboy or similar employee.

N.Y.Labor Law § 196–d (McKinney 1994). That law was enacted to ensure that service employees actually receive the tips given to them by the public and to prohibit employers from engaging in the deceptive practice of confiscating tips in order to pay wages. *See* N.Y.Labor Law § 196–d, Legislative Bill Jacket, Assembly 3690, Print S. 7020 (1968). The minimum wage order promulgated by the New York State Department of Labor for the restaurant industry provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate for hours worked in excess of forty hours in one work week." 12 NYCRR § 137–1.3. That provision ensures that wages paid to employees "provide adequate maintenance" for the employee and thereby protect "the health and well-being of the people of the state." New York Labor Law § 650. Accordingly, "[t]he remedies sought by the [Attorney General] are not designed to advance the government's pecuniary interest. Neither are they designed to advance private rights. Rather the request to enjoin defendants from further violations of the [New York State Labor Law] and the request for unpaid wages and liquidated damages are simply a method of enforcing the policies underlying [that law]." *Martin v. Safety Electric Constr. Co.*, 151 B.R. at 639.

### Conclusion

Based on the foregoing, we find that the Action is excepted from the automatic stay pursuant to § 362(b)(4) of the Code. The adjourned hearing on the preliminary injunction motion shall be held on July 11, 1995, at 10:00 a.m.

SETTLE ORDER.