938 A.2d 239

**WORTH & COMPANY, INC.**

**v.**

**DEPARTMENT OF LABOR AND INDUSTRY.**

**Appeal of Department of Labor And Industry.**

Supreme Court of Pennsylvania.

Argued Sept. 12, 2006.

Decided Dec. 27, 2007.

and the workers' compensation judge's undisturbed factual finding concerning causation referenced above.

70

Roger H. Caffier, James A. Holzman, Peter Von Getzie, PA Dept. of Labor & Industry, Barbara Adams, PA Office of General Counsel, Harrisburg, for Dept. of Labor & Industry.

Jay R. Lantzy, Francis Stephenson Matthes, Tucker Arensberg, P.C., for Prevailing Wage Appeals Board.

Brian Edward Subers, Andrew W. Bonekemper, Fox Rothschild, LLP, Lansdale, for Worth & Co., Inc.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER, BALDWIN, JJ.

## OPINION

Justice EAKIN.

In September, 1998, Lower Merion School District awarded a contract to appellee, Worth & Company, Inc., to perform construction work. Appellee subcontracted sprinkler work to First Choice Fire Protection, Inc. The Department of Labor and Industry subsequently investigated allegations that First

Choice failed to pay certain workers on the project the prevailing minimum wage, as required by the Prevailing Wage Act.[1] In a letter dated September 7, 1999, the Department requested appellee withhold $41,324.46 in contract payments to First Choice pending its investigation.[2] The letter, borrowing language from § 10(a) of the Act,[3] further stated "because [the withholding request was] directed toward a subcontractor, nothing in [the] request shall be deemed to impair the right of the prime contractor to receive final payment due to the failure of any of the subcontractors to comply with the provisions in the Act." Department Letter, 9/7/99, Trial Exhibit 1.

On September 14, 1999, the School District informed appellee it would not approve its application for payment until the Department resolved First Choice's underpayment of workers. Two days later, the Department wrote a letter to the School District reiterating its position that First Choice's failure to comply with the Act's provisions would not impair appellee's

1. Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. §§ 165–1–165–17.

2. $41,324.46 was a preliminary estimate of First Choice's underpayment. Eventually, the Department and First Choice entered a joint stipulation indicating the underpayment of the workers was $25,797.19. *See* Joint Stipulation of Facts, 2/5/02, Trial Item No. 6, # 37. The Department concluded First Choice failed to pay appropriate wages to 11 workers.

3. Section 10(a) of the Act provides:
   Before final payment is made by, or on behalf of any public body of any sum or sums due on public work, it shall be the duty of the treasurer of the public body or other officer or person charged with the custody and disbursement of the funds of the public body to require the contractor and subcontractor to file statements, in writing, in form satisfactory to the secretary, certifying to the amounts then due and owing from such contractor and subcontractor, filing such statements to any and all workmen for wages due on account of public work, setting forth therein the names of the persons whose wages are unpaid and the amount due to each respectively, which statement so to be filed shall be verified by the oath of the contractor and subcontractor, as the case may be, that he has read such statement subscribed by him, knows the contents thereof and that the same is true of his own knowledge: Provided, nevertheless, That *nothing herein shall impair the right of a contractor to receive final payment because of the failure of any subcontractor to comply with provisions of this act.*
   43 P.S. § 165–10(a) (emphasis added).

right to receive final payment, again referring to § 10(a). Notwithstanding the September 16 letter, in June, 2000, the School District paid appellee $67,824.43, but withheld $32,890.28, representing appellee's contract retainage on the project.[4]

In December, 2000, appellee sent a letter to the Department, again objecting to the School District withholding money owed under the contract. In response, the School District informed the Department it intended to continue withholding the money until the Department substantiated appellee's legal right to disbursement. In an attempt to resolve the conflict, the Department informed the School District and appellee it had reached a proposed settlement with First Choice, whereby First Choice agreed it underpaid employees by $25,797.19. The Department also informed the School District the Act limits any School District withholding to the amount owed to First Choice under the contract. Accordingly, the School District requested from appellee the amount owed to First Choice on the subcontract. Appellee complied by providing an itemization showing a negative balance due to First Choice.[5]

On January 31, 2001, the School District informed the Department that as First Choice was not entitled to any further payment, it agreed it was no longer necessary to withhold funds. However, on February 6, 2001, the Department responded appellee could not claim it owed First Choice a negative balance based on replacement costs and other business expenses; since, without those costs, appellee owed First Choice $206,562.50 on the contract, the School District remained required to withhold the $32,890.28. *See* Department Letter, 2/6/01, Trial Exhibit 17.

**4.** A contract "retainage" is a percentage withheld until the construction has been satisfactorily completed and all mechanic's liens are released or have expired. Black's Law Dictionary 1317 (7th ed.1999).

**5.** Appellee's contract with First Choice was for $323,000, but First Choice defaulted. Appellee paid First Choice $116,437.50 for the work actually completed. First Choice filed for bankruptcy, and appellee paid another subcontractor $194,000 to complete the work. After purchasing materials, providing labor, and paying legal costs resulting from the default, appellee sustained a net loss of $3,505.15 on the contract with First Choice.

Appellee filed a grievance with the Prevailing Wage Appeal Board, but the Board deadlocked 2–2 and therefore affirmed the Department's position as stated in its September 7, 1999 letter, that the School District was required to withhold the funds.

Appellee appealed. The Commonwealth Court, *en banc*, reversed the Board. The court agreed that the Department erred in authorizing the School District to withhold payment, when appellee owed no further payment to First Choice. *Worth & Co., Inc. v. Dept. of Labor & Industry*, 857 A.2d 727, 731–32 (Pa.Cmwlth.2004). The court emphasized § 10(a)'s plain language, which states "nothing herein shall impair the right of a contractor to receive final payment because of the failure of any subcontractor to comply with provisions of this act." *Id.*, at 730 n. 7 (quoting 43 P.S. § 165–10(a)). The court explained § 10(b),[6] which the Department relied on, only comes into play when a workman files a protest and objects to the payment of a contractor, which the record does not show to have been the case here. *Id.*, at 731. Moreover, the court noted § 10(b) would only permit the School District to withhold money appellee owed to First Choice. As appellee owed no money to First Choice, the Commonwealth Court concluded § 10(b) was irrelevant to the dispute and under § 10(a)'s

**6.** Section 10(b) of the Act provides:

In case any workman shall have filed a protest, in writing, within three months from the date of the occurrence of the incident complained of, with the secretary, objecting to the payment to any contractor to the extent of the amount or amounts due or to become due to the said workman for wages for labors performed on public works, thereupon, the secretary shall direct the fiscal or financial officer of the public body, or other person charged with the custody and disbursements of the funds of the public body, to deduct from the whole amount of any payment on account thereof the sum or sums admitted by any contractor in such statement or statements so filed, to be due and owing by him on account of wages earned on such public work before making payment of the amount certified for payment and may withhold the amount so deducted for the benefit of the workmen whose wages are unpaid, as shown by the verified statements filed by any contractor, and may pay directly to any workmen the amount shown to be due to him for such wages....

43 P.S. § 165–10(b) (footnote omitted).

plain language, the Department erred in directing the School District to withhold payment from appellee.[7]

Judge Smith–Ribner dissented, opining the majority erred in failing to defer to the Department's regulations, which authorize the withholding of payment under the circumstances here and which, she believed, "are consistent with the Act and fall squarely within [the Department's] statutory authority." *Worth*, at 734 (Smith–Ribner, J., dissenting). In Judge Smith–Ribner's view, these regulations were consistent with "the overriding purpose of the Act … to protect workers employed on public projects by ensuring that they receive at least the prevailing minimum wage," and thus, she opined the Department's regulations represented an "entirely permissible exercise of its administrative rulemaking power" to which the majority should have deferred. *Id.*

Judge Pellegrini also filed a dissent, which Judge Simpson joined. Like Judge Smith–Ribner, Judge Pellegrini opined the Act "does not intend that the prime contractor on a public work project receive final payment that includes wages that should have been paid to the subcontractor's employees." *Worth*, at 735 (Pellegrini, J., dissenting). Judge Pellegrini pointed out §§ 10(a) and (b) aside, § 11(f) gives the Commonwealth its own right to seek payment of wages.[8] Judge Pellegrini stated § 10(a) must be interpreted as providing "the failure of the subcontractor to provide such a statement means that the general contractor receives final payment for the work, less any funds retained for work performed by one of its

7. The Commonwealth Court also criticized the Department's reliance on its own regulations to support its position, noting "[t]he Department may not circumvent the statutory protection afforded to Worth by Section 10(a) of the Act." *Id.*, at 731-32 n. 9.

8. Section 11(f) of the Act provides:
   Whenever it shall be determined by the secretary, after notice and hearing as required by this section, that any person or firm has failed to pay the prevailing wages and that such failure was intentional, such persons or firm shall be liable to the Commonwealth of Pennsylvania for liquidated damages, in addition to damages for any other breach of the contract in the amount of the underpayment of wages due any workman engaged in the performance of such contract. 43 P.S. § 11(f).

subcontractors." *Id.*, at 736. He noted, however, it was not clear whether appellee actually owed First Choice any more money for the work it had performed under the contract, and it was only these amounts that could properly be withheld. Judge Pellegrini believed the court should have remanded the case for a determination of whether "any of the amounts withheld by the School District are for work performed by First Choice, for which it was not paid before it defaulted on the project. . . ." *Id.*, at 737.

■■ We granted allowance of appeal to determine whether the Act limits the Department's ability to withhold payment to the primary contractor of the wages of employees who are working for subcontractors on public works projects. Since the interpretation of a statute is a question of law, our standard of review is *de novo,* and our scope of review is plenary. *In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, 1261 (2006).

The Department argues the Commonwealth Court incorrectly held § 10(a) preempts § 10(b) and its regulations, asserting both sections should be read together to assure all public project workmen receive the prevailing wage. The Department also alleges the Commonwealth Court incorrectly held the Act's regulations do not permit subcontractor withholding, improperly restricting the Department's administrative rulemaking power. Finally, the Department argues the court's opinion leaves no reasonable or expeditious equivalent remedies as the Act's withholding provisions and regulations.

Appellee counters the Act's plain and unambiguous language makes it clear a prime contractor is not liable for the subcontractor's debts. Additionally, appellee asserts the School District's withholding was not the only remedy for the Department because it could have pursued payment for the workers through First Choice's bankruptcy proceedings.

■ "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). "Words and phrases shall be construed according to the rules

of grammar and according to their common and approved usage. . . ." *Id.*, § 1903(a). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Id.*, § 1921(a). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Chanceford Aviation Properties, L.L.P. v. Chanceford Twp. Board of Supervisors*, 592 Pa. 100, 923 A.2d 1099, 1104 (2007) (quoting *Hannaberry HVAC v. Workers' Compensation Appeals Board (Snyder Jr.)*, 575 Pa.66, 834 A.2d 524, 531 (2003)) (internal citation omitted).

Here, the Act's language, while typically prolix, is nevertheless free from ambiguity. Section 10(a) specifies "nothing herein shall impair the right of a contractor to receive final payment because of the failure of any subcontractor to comply with provisions of this act." 43 P.S. § 165–10(a). The Department itself acknowledged § 10(a) in the September 7, 1999 letter to appellee. The letter requested a withholding against First Choice due to violations of the Act, but indicated that as the request was directed toward a subcontractor, the Act provided the prime contractor's right to payment should not be impaired. *See* Department Letter, 9/7/99, Trial Exhibit 1.

▆ Later in the proceedings, the Department changed its position, seeking to withhold payments to appellee based on § 10(b). However, the Commonwealth Court found § 10(b) only applies when a workman files a protest, objecting to payments made to a prime contractor. *Worth*, at 731 (citing 43 P.S. § 165–10(b)). We agree. Section 10(b) specifically states a *workman* must file a written protest to a payment, and the payment complained of must be an amount due to the workman for work performed. *See* 43 P.S. § 165–10(b) (emphasis added). Here, the joint stipulation of facts, drafted February 5, 2002, noted appellee provided the School District with an itemization indicating a negative balance due to First Choice. *See* Joint Stipulation of Facts, 2/5/02, Trial Item No. 6, # 23. As appellee owed no balance to First Choice, there was no amount in controversy which the underpaid workers could have protested.

■ The Department asserts the Commonwealth Court dismissed the Act's regulations, 34 Pa.Code §§ 9.104(b)[9] and 9.110(b),[10] which authorize withholding. The court did not dismiss the regulations, but rather noted these regulations do not mention a contractor's right to final payment on a public works project, and certainly, the Department may not circumvent statutory protection afforded appellee under § 10(a). *See Worth,* at 731–32 n. 9. Despite the Department's reference to these regulations, it is axiomatic that a statute is the law and is preemptive of applicable agency regulations. *See Snizaski v. WCAB (Rox Coal Co.),* 586 Pa.146, 891 A.2d 1267, 1281 (2006).

■ The Department asserts the Commonwealth Court majority reached a result which left unpaid workers with no recourse. As the Commonwealth Court correctly noted, the Act provides a remedy when the prevailing wage is not paid. Sections 11(e) and (f) provide the Secretary of Labor and Industry may request the Attorney General to recover applicable penalties for the Commonwealth, and persons or firms who intentionally failed to pay the prevailing wages shall be liable to the Commonwealth for liquidated damages in the amount of wages due to workmen under a contract. *See* 43 P.S. §§ 165–11(e), (f).

■ Additionally, the Bankruptcy Code offers an exception to the automatic stay once bankruptcy proceedings are initiated. Section 362(b)(4) provides a lift of the automatic stay "of the commencement or continuation of an action or proceed-

9. The fiscal officer of the public body, the treasurer or other officer of the public body, charged with the custody and disbursement of the funds of the public body, shall ascertain that the wage rates … are maintained, otherwise it is his duty to uphold final payment and to inform the Secretary of the failure by the contractor or a subcontractor to comply with the act.

34   Pa.Code § 9.104(b).

10. It is the duty of the treasurer or other officer charged with the custody and disbursement of public funds to withhold the amount of wages unpaid or not paid … for the benefit of the workman whose wages have not been paid by the contractor and he may pay directly to a workman the amount shown to be due him.

34   Pa.Code § 9.110(b).

ing by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power. . . ." 11 U.S.C. § 362(b)(4). The Commonwealth Court cited *In re Ngan Gung Restaurant, Inc.*, 183 B.R. 689 (Bankr.S.D.N.Y.1995), which held governmental units seeking to enforce labor laws are excepted from the automatic bankruptcy stay, and such exception applies to actions for employee restitution. *Ngan Gung* noted matters dealing with issues of public safety are excepted from the stay. *Id.*, at 691 (citing *Word v. Commerce Oil Co. (In re Commerce Oil Co.)*, 847 F.2d 291, 295 (6th Cir.1988)). The court found litigation by government units seeking to enjoin, assess penalties for improper labor law practices, or cause employers to make restitution have all been excepted from the automatic stay under § 362(b)(4). *Id.*, at 691–92 (collecting cases). Because the Bankruptcy Code provides an exception to the automatic stay for enforcement of state and federal labor laws, the underpaid workmen here were not without remedy. Had the Secretary of Labor and Industry requested the Attorney General to recover applicable penalties pursuant to 43 P.S. §§ 165–11(e) and (f), it could have resulted in a judgment for the workers, allowing an exception to the automatic stay provision in First Choice's bankruptcy proceedings.

In addition to remedies through the Bankruptcy Code and §§ 11(e) and (f) of the Act, underpaid workmen are also granted a remedy by § 13 of the Act, which states "[a]ny workmen paid less than the rates specified in the contract shall have a right of action for the difference between the wage so paid and the wages stipulated in the contract. . . ." 43 P.S. § 165–13.

Based on the parties' stipulation of facts, the record shows appellee does not owe First Choice any funds. Appellee was the contractor on a public works project, not an indemnitor or guarantor of First Choice's acts by statute or otherwise. Because the language of § 10(a) is clear and preemptive of other sections and regulations, we cannot disregard it. Appel-

lee is entitled to final payment on its public works contract with the School District.

Order affirmed. Jurisdiction relinquished.

Former Justice NEWMAN did not participate in the decision of this case.

Chief Justice CAPPY, Justice SAYLOR and BAER and Justice BALDWIN join the opinion.

Justice CASTILLE files a dissenting opinion.

Justice CASTILLE, dissenting.

I respectfully dissent. The Majority affirms the decision of the Commonwealth Court reversing the Order of the Prevailing Wage Appeal Board. For the reasons expressed in the dissenting opinion of the Honorable Dante R. Pellegrini below, I would reverse the opinion of the Commonwealth Court and remand this matter to the Board for further consideration consistent with Judge Pellegrini's dissenting opinion. *See Worth & Co. v. Dept. of Labor and Industry*, 857 A.2d 727, 735–37 (Pa.Cmwlth.2004) (Pellegrini, J., dissenting).