J-A18034-22

2023 PA Super 32

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                : PENNSYLVANIA
                                :
        v.                      :
                                :
                                :
                                :
GOODCO MECHANICAL, INC.         :
                                :
        Appellant               : No. 634 WDA 2021

Appeal from the Judgment of Sentence Entered April 26, 2021
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0000123-2020

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                : PENNSYLVANIA
                                :
        v.                      :
                                :
                                :
                                :
SCOTT CAMERON GOOD              :
                                :
        Appellant               : No. 796 WDA 2021

Appeal from the Judgment of Sentence Entered April 26, 2021
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0000124-2020

BEFORE:  STABILE, J., MURRAY, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.:                    **FILED: FEBRUARY 28, 2023**

Scott Cameron Good and his construction company, Goodco Mechanical, Inc. ("Goodco"; collectively with Good, "Appellants"), appeal from the judgments of sentence imposed following their pleas of guilty to theft by failure to make required disposition of funds received, 18 Pa.C.S.A. § 3927. Appellants argue that their charges were based on violations of the Prevailing

Wage Act ("PWA"),[1] over which they contend the court lacked jurisdiction; the PWA is unconstitutionally vague as a basis for prosecuting theft; and criminal prosecution in the Court of Common Pleas offended their procedural due process rights. Good, individually, also brings challenges to the court's exercise of its discretion at sentencing. We affirm.

## I.   Factual and Procedural History

Good is the owner of Goodco, a construction company that employs roughly 60 people. As the result of a grand jury investigation, the Commonwealth, through the Office of the Attorney General ("OAG"), filed criminal complaints charging Good and Goodco with numerous crimes including theft by failure to make required disposition of funds received. The Commonwealth alleged that Appellants had directed employees working on public construction projects subject to the PWA to record some of their hours at a lower pay rate than that properly applicable under the PWA.[2]

The PWA requires contractors working on projects subject to its strictures to pay, at minimum, a prevailing minimum wage for a given job classification. *See* 43 P.S. § 165-5. The rates vary by locality and are set by the Department of Labor and Industry ("DLI"). They also include contributions

---

[1] Act of Aug. 15, 1961, P.L. 987, as amended, 43 P.S. §§ 165–1 to 165–17.

[2] *See* 43rd Statewide Investigating Grand Jury Presentment No. 16 ("Presentment"), at 2; Criminal Complaint Affidavit of Probable Cause (incorporating Presentment).

for employee benefits. **See id.** at §§ 165-2.1, 165-7. The scheme allowed Good and Goodco to bid projects with lower wage and fringe benefits costs.[3]

The Commonwealth subsequently filed Informations charging Good and Goodco with one count of deceptive business practices and 27 counts each of theft by unlawful taking, theft by deception, receipt of stolen property, and failure to make required disposition of funds received.[4] The Commonwealth additionally charged Good with perjury, false swearing, and tampering with public records.[5] Regarding the charges for theft by failure to make required disposition of funds received, the Informations alleged that between October 2014 and March 2019, Good and Goodco had failed to remit "required wages and fringe benefits" owed to 27 Goodco employees. **See** Information, Good, 2/3/20; Information, Goodco, 2/3/20. The amounts due the victims totaled nearly $65,000. **Id.**

The parties engaged in plea negotiations, and the Commonwealth offered to withdraw all other charges if Good pleaded guilty to tampering and paid restitution and fines of approximately $75,000. N.T., 5/8/20, at 4-5. The court refused to accept the plea deal. **Id.** at 5-6. The Commonwealth made a second offer under which it would *nol. pros.* all other charges if Good pleaded guilty to theft by failure to make required disposition of funds received, paid

---

[3] **See** Presentment at 2.

[4] Respectively, 18 Pa.C.S.A. §§ 4107(a)(6), 3921(a), 3922(a)(1), 3925(a), and 3927(a).

[5] 18 Pa.C.S.A. §§ 4911(a)(1), 4903(a)(1), and 4902(a), respectively.

approximately $65,000 in restitution, and served five years of probation. Mot. for Recusal, 11/17/20, at Ex. B. The court rejected this deal as well. ***Id.***

Appellants filed a Motion for Recusal based on the court's refusal of the negotiated plea deals. Appellants argued the court's rejections were "manifestly unreasonable and [show] ill will toward Mr. Good and Goodco" and that the court had "pre-judged this case before hearing any evidence and has a pre-determined sentence in mind." ***Id.*** at ¶¶ 32-33. At a hearing on the motion, the court stated that it had rejected the plea agreements because "if a message is going to be sent to other contractors that a period – the [c]ourt would accept a period of incarceration." N.T., Hearing, Mot. for Recusal, 12/14/20, at 7.

The court denied the motion. The court stated it did "not feel that either of the proposed plea terms serve justice[,] considering both [d]efendants [were] accused of theft of nearly $65,000." Opinion and Order, 1/18/21, at 3. The court also observed that "if Good were to plead guilty, he would accept the criminal affidavit as true, which alleges Good had previously been caught failing to pay prevailing wages, and Good was warned he would be charged criminally if it occurred again." ***Id.*** The court observed that the previously proposed plea agreements would have resulted in a complete dismissal of charges against Goodco, and a dismissal of most of the charges against Good, including felony charges that had a standard sentencing range of incarceration of up to nine months per count. ***Id.*** at 3-4.

The court also rejected the claim that it had pre-determined that it would only accept a plea that would allow a sentence of incarceration:

> [W]hile this Court may have discussed incarceration as an appropriate sentence to a guilty plea, that was done based solely on the fact that Good would be making a total admission of guilt. Lengths of incarceration, amount of fines or restitution, number of charges and which specific charges of the information were not discussed by this Court. Also, this Court has in no way implied what sentence would be given if [Appellants] were to go to trial and be convicted. This Court merely responded to counsel's specific request for what this Court believes was an appropriate sentence based on the facts as presented in the criminal affidavit. In no way has this Court implied it would refuse to listen to any mitigating or aggravating factors presented by the parties, nor has this Court alleged it would refuse to hold a fair and impartial sentencing hearing if a guilty plea was entered by either [Good or Goodco].

*Id.* at 4-5.

The parties later presented to the court a third plea agreement, under which Appellants would plead guilty to theft, Good would pay restitution, and the sentences would be left to for the court to determine. At a conference, after indicating it would accept the plea deal, the court set forth its approach to white collar crime:

> One of my, I guess I could call them, pet peeves over many years of doing this, both as a prosecutor and as judge, is white-collar crime, all right. That is something that has always gotten my attention, you know, when people steal through business and whatnot; and that's something I've always been very tough on.
>
> Of course, it goes without saying people who abuse children or abuse women are at the top of that list, but not too far down the list is white-collar crime.
>
> So I don't want Defense counsel to think that I've got some kind of grudge on Mr. Good, who I've never met in my life, or Goodco

or anything about this company. The way I'm handling this case is very consistent with the way that I have dealt with white-collar crime cases, you know, particularly where somebody is going to plead guilty.

N.T., Status Conference, 3/10/21, at 8-9.

The parties completed written Negotiated Plea Agreement and Guilty Plea Colloquy forms. Good's written colloquy stated that he would plead guilty to five counts of theft by failure to make required disposition of funds received, graded as a first-degree misdemeanor, and pay restitution of $64,157.09, with the sentence left open for the court. Negotiated Plea Agreement and Guilty Plea Colloquy, Good, 3/19/21, at 1-2. The written colloquy for Goodco stated that it would plead guilty to one count of theft by failure to make required disposition of funds received, graded as a first-degree misdemeanor, and the resulting sentence would be up to the court. Negotiated Plea Agreement and Guilty Plea Colloquy, Goodco, 3/19/21, at 1-2. Both colloquies stated the maximum sentence per count was five years' incarceration and a $10,000 fine.

Both colloquies also indicated Appellants' understanding that the issues on which they could obtain appellate review would be limited, once they pleaded guilty, to challenges to the jurisdiction of the court, the validity of the pleas, the legality of the sentences, and the effectiveness of counsel. Guilty Plea Colloquy, Good, at 5; Guilty Plea Colloquy, Goodco, at 5. Good circled "Yes," on both forms, in response to the question. *Id.* The Commonwealth filed Amended Informations in accordance with the plea agreements.

Good then entered the pleas in open court on his own behalf and on behalf of Goodco. N.T., Plea and Colloquy, 3/19/21, at 3. The court noted restitution was set at $64,157.09. *Id.* at 5. Good acknowledged that he had read and understood the plea agreements. *Id.* at 10. He also stated he understood the factual basis for the pleas and the nature of the charges. *Id.* at 11-12. The court asked defense counsel if he had reviewed with Good the factual basis for the pleas, and counsel responded in the affirmative. *Id.* at 14. Defense counsel also said he had explained to Good the elements of theft by failure to make required disposition of funds received. *Id.*

The court accepted the guilty pleas and ordered a pre-sentence investigation report ("PSI"). At sentencing, the court stated it had reviewed the probation office's recommendation, Appellants' sentencing memorandum, and over 40 character letters. N.T., 4/26/21, at 3, 7, 8. It admitted into evidence Good's nine-page sentencing memorandum and the character letters, which it said was probably the most letters it had ever received for a sentencing. *Id.* at 7, 17-18. The Commonwealth informed the court that Good had paid the full $64,157.09 in restitution. *Id.* at 4.

Appellants then presented three character witnesses who spoke to Good's integrity, work ethic, character, and good reputation in the community, particularly among his employees. *Id.* at 8-16. Good exercised his right to allocution, thanked the community and Goodco's employees for their support, and apologized for causing hardship. *Id.* at 17-19.

Defense counsel argued that the case involved no threat of serious harm, and the victims had been fully compensated. *Id.* at 20. Counsel argued that Good had accepted responsibility, admitted his guilt, and sold assets and used a line of credit to pay restitution "to make sure that he could make the victims whole." *Id.* at 21. Counsel argued Good has no history of delinquency or criminal activity, and that a sentence of confinement would cause excessive hardship on his businesses and employees. *Id.* at 20. Counsel also argued there would be no risk of reoffense. *Id.* at 21. Counsel pointed out that the PSI recommended probation. *Id.* at 19-20.

The court asked whether Appellants agreed with the contents of the PSI, and in particular Good's income, and defense counsel said they did. *Id.* at 22. It then noted that Good had pleaded guilty to five counts of theft graded as a first-degree misdemeanor, which carried an offense gravity score of 3, and that Good had no prior criminal history. *Id.* at 22. The court noted the guidelines ranges and confirmed that the Commonwealth was not seeking a sentence in the aggravated range. *Id.* at 23. It then stated that it would not impose an aggravated-range sentence:

> Okay. So, you know, I put a bunch of thought into this and that I think that a pretty good argument could be made for sentencing him in the aggravated range, but I've decided not to go there. All right. I've decided that sticking with the standard range, I think would be appropriate.

*Id.*

The court noted the maximum fine for a first-degree misdemeanor is $10,000. *Id.* at 25-26. It also noted that the probation department had recommended that Goodco's sentence be fines only, and that Goodco had pleaded guilty to only one count. *Id.* at 26.

The court then sentenced Good on counts one through four to 30 days to 6 months minus a day of incarceration. On count five it imposed a sentence of three years of probation. The court ordered Good to serve the sentences consecutively, resulting in an aggregate period of incarceration of 120 days to 24 months minus 4 days. The court also ordered him on each count to pay a fine of $750 and complete 200 hours of community service. It also required him to pay restitution to each of the victims. *Id.* at 28-29. Goodco received a sentence of a fine of $10,000 and paying the costs of prosecution.

Good filed a post-sentence motion seeking a modification of his sentence. At a hearing on the motion, the court acknowledged that it had ordered PSIs prior to sentencing, that Good had presented character letters, addressed the court, apologized, pledged to help the victims, paid a large amount of restitution "so that the victims can be made whole," and asked for a probationary sentence. N.T., 6/11/21, at 11. The court denied the motion. Appellants filed notices of appeal.[6]

Appellants raise the following issues:

---

[6] As Goodco did not file a post-sentence motion, it filed its notice of appeal while Good's post-sentence motion was pending in the trial court.

A. Should Mr. Good and Goodco's convictions be vacated because the trial court lacked jurisdiction over this prosecution?

B. Should Mr. Good and Goodco's convictions be vacated because the Prevailing Wage Act, used in combination with the theft statutes, is unconstitutionally vague as applied to this case?

C. Should Mr. Good and Goodco's convictions be vacated because the Commonwealth violated their procedural due process rights?

D. Should Mr. Good's sentence be vacated because the trial court failed to state sufficient reasons in the record justifying its sentencing decision?

E. Should Mr. Good's sentence be vacated because the trial court failed to consider relevant sentencing criteria, including the nature and circumstances of the offense and the history and character of Mr. Good?

F. Should Mr. Good's sentence be vacated because the trial court sentenced Mr. Good based solely on the seriousness of the crime, to the exclusion of other relevant factors?

G. Should Mr. Good's sentence be vacated because it was the result of bias and prejudice and not individualized sentencing decision?

H. Should Mr. Good's sentence be vacated because the trial court abused its discretion by sentencing him consecutively?

Appellants' Br. at 7-8 (suggested answers omitted).

## II. Discussion

### A. Statutory Provisions

We first provide a summary of the two statutes mainly at issue in this appeal – the PWA and theft by failure to make required disposition of funds received. Appellants' first three claims involve the statutes and how they interact with each other.

1.      The PWA

At its core, the PWA requires all contractors to pay, at minimum, the prevailing minimum wage to workers on certain projects costing $25,000 or more that are paid in whole or in part by public funds. ***See*** 43 P.S. §§ 165-2(5), 165-5 ("Not less than the prevailing minimum wages as determined hereunder shall be paid to all workmen employed on public work"). It is a remedial statute. ***Borough of Youngwood v. Pa. Prevailing Wage Appeals Bd.***, 947 A.2d 724, 731 (Pa. 2008). Its primary purpose is to protect workers "employed on public work projects from substandard pay by ensuring that they receive prevailing minimum wage." ***Pa. Nat'l Mut. Cas. Ins. Co. v. Dep't of Labor and Indus., Prevailing Wage Appeals Bd.***, 715 A.2d 1068 (Pa. 1998). Such protection is necessary, as public contracts are customarily awarded to the lowest bidder. ***500 James Hance Ct. v. Pa. Prevailing Wage Appeals Bd.***, 33 A.3d 555, 563 n.11 (Pa. 2011).

Pursuant to the PWA, prior to the making of any contract for work on a public work project, the Secretary of the DLI, in consultation with an advisory board established by the PWA, sets the prevailing minimum wages that must be paid on that project, including contributions for employee benefits. 43 P.S. at §§ 165-2.1, 165-7. The wages are specific to the locality where the work will be performed, and to "each craft or classification" of the workers. ***Id.*** at § 165-7. The prevailing wage rates must be published in a notice prior to bidding and included in the contract for the winning bid. ***Id.*** at §§ 165-3, 165-

4. As payment comes due, the contractor must file written statements certifying the amounts owed to workers under the contract. *Id.* at § 165-10.

The PWA also contains a provision empowering the Secretary to make regulations for its enforcement. *Id.* at § 165-14; *see* 34 Pa.Code §§ 9.101-9.112. Of relevance to Appellants' arguments, the regulations define "craft" as, "Special skills and trades which are recognized as such by custom and usage in the building and construction industry," and "classification" as, "Specific categories of jobs which are performed within a 'craft' as defined in this section[.]" 34 Pa.Code § 9.102. The regulations also require contractors to maintain employment records specifying the craft and classification for each worker. They provide that the records shall reflect the number of hours a worker worked each day at each classification, including that if a worker "worked in more than one craft or classification for which different rates were payable the records shall show the number of hours in each day as aforesaid in which he worked at the different crafts or classifications." *Id.* at § 9.109.

The PWA provides multiple avenues for obtaining remedies for violations. A worker may file a complaint with DLI within three months of an alleged underpayment. *Id.* 43 P.S. § 165-11(b). Alternately, the government entity having work performed or its financial officer may alert DLI of an alleged violation. *Id.* at § 165-11(a). Regardless of who made allegations of a violation, the Secretary is to investigate whether a violation has occurred, including holding a hearing after providing due notice to the interested parties. *Id.* at § 165-11(c).

If the Secretary determines there was a violation but that it was unintentional, it must allow the contractor a reasonable opportunity to reimburse the workers (or provide adequate security for payment), "on such terms and conditions as shall be approved by the [S]ecretary." *Id.* at § 165-11(d). If the Secretary determines a violation was intentional, the Secretary may request the OAG recover damages in the amount of the underpayment and notify "all public bodies" to bar the contractor from further contracts for three years. *Id.* at § 165-11(e), (f). The PWA provides for appeals of the Secretary's determination to be heard by an Appeals Board. *Id.* at § 165-2.2.

Whether a violation was intentional must be proven by substantial evidence. 43 P.S. § 165-11(h); *Leonard S. Fiore, Inc. v. Com., Dep't of Lab. & Indus., Prevailing Wage Appeals Bd.*, 585 A.2d 994, 996 (Pa. 1991). Substantial evidence of intentional conduct includes "acts of omission or commission done wilfully [sic] or with a knowing disregard of the rights of workmen resulting in the payment of less than prevailing wage rates" or a failure to rectify conduct after notice by the Secretary. 43 P.S. § 165-11(h).

The PWA also provides for two other consequences for violations. First, the PWA states that if a contractor falsely certifies the payment due, the contractor is guilty of a misdemeanor and subject to a fine up to $2,500 and imprisonment up to 5 years. *Id.* at § 165-10(c). Second, the PWA contains a clause permitting a worker paid less than the amount specified in the contract to sue. *Id.* at § 165-13; *see also Worth & Co. v. Dep't of Labor and Indus.*, 938 A.2d 239, 245 (Pa. 2007) (acknowledging that in addition to the

remedies under subsections 165-11(e) and (f), workers have a civil right of action under Section 165-13).

      2.     Theft

The statute codifying theft by failure to make required disposition of funds received took effect over a decade after the enactment of the PWA, in 1973. In short, it criminalizes the act of failing to properly distribute another's property in accordance with either an agreement or a legal obligation. ***See Commonwealth v. Stetler***, 95 A.3d 864, 886 (Pa.Super. 2014) (explaining the statute "is designed to require the actor to meet the obligation under which he undertook to collect monies or property of another") (citation omitted)).

The statute defines the crime as follows:

> **(a) Offense defined.--**A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S.A. § 3927(a); ***see Commonwealth v. Morrissey***, 654 A.2d 1049, 1052 (Pa. 1995) (listing the four elements of the crime as: 1) "obtaining of the property of another; 2) subject to an agreement or known legal obligation upon the receipt to make specified payments or other disposition thereof," 3) the "intentional dealing with the property obtained as the defendant's own; and 4) failure of the defendant to make the required disposition of the

- 14 -

property"); *accord Commonwealth v. Green*, 162 A.3d 509, 524 (Pa.Super. 2017)).

Regarding the proof required, we have explained that the defendant may have failed to adhere to either an agreement or a preexisting legal obligation. *See Commonwealth v. English*, 597 A.2d 122, 124-25 (Pa.Super. 1991). We established that the element requiring the defendant to "deal" with the other's property as his own means only that the actor must have treated the other's property as if it were his own; it does not require the defendant to have used the property. *Wood*, 637 A.2d at 1344. Finally, although the Commonwealth must prove the defendant "intentionally" dealt with the property as his own, the remaining elements are satisfied if the Commonwealth proves the defendant acted intentionally, knowingly, or recklessly. *Commonwealth v. Bershad*, 693 A.2d 1303, 1306 (Pa.Super. 1997), *overruled on other grounds*, *Commonwealth v. Dixon*, 985 A.2d 720, 724 (Pa. 2009).[7]

The theft by failure to make required disposition of funds received statute replaced the fraudulent conversion and embezzlement sections of the previous penal code. *Commonwealth v. Coward*, 478 A.2d 1384, 1386 (Pa.Super. 1984); *Commonwealth v. Austin*, 393 A.2d 36, 38 (Pa.Super. 1978). It is derived from Section 223.8 of the Model Penal Code ("MPC"), and

---

[7] *Dixon* disapproved *Bershad* on the issue of venue.

- 15 -

the two provisions are nearly identical. *See* 18 Pa.C.S.A. § 3927, Comment; ***Commonwealth v. Fritz***, 470 A.2d 1364, 1366 (Pa. 1983).[8]

The commentary to the MPC explains Section 223.8 "was designed generally to criminalize offenses which formerly 'arguably constitute[d] merely a breach of contract rather than a misappropriation of property of another,' and specifically to ameliorate the sort of confusing and unjust results which the draftsmen saw as resulting from Pennsylvania and other jurisdictions' law on fraudulent conversion." American Law Institute, Model Penal Code, § 223.8, Revised Commentary at 255-56 (1980). It was drafted in direct response to decisions such as ***Commonwealth v. Mitchneck***, 198 A. 463 (Pa.Super. 1938), in which an employer was acquitted of fraudulent conversion on the basis that the money he deducted from his employees' wages did not technically belong to the employees. ***See id.*** at 259. The commentary explains that Section 223.8 "recognizes that in some situations one who promises to make certain payments or other disposition of property should be punished for dealing with the property as his own." ***Id.*** at 255-56. The commentary cautions, however, that "[t]he challenge . . . is to distinguish default that should be assimilated to theft from non-performance that should be left to the traditional remedies for breach of contract." ***Id.***

---

[8] ***See also Cummings v. Att'y Gen. of U.S.***, 265 F. Appx. 122, 125 (3d Cir. 2008).

## B. Jurisdiction

Appellants' arguments begin with a claim that the trial court lacked jurisdiction.[9] They argue that where the legislature has given an administrative agency power to adjudicate on a particular subject matter, that jurisdiction is exclusive, and that where the legislature has enacted "a pervasive regulatory scheme and [established] a governmental agency possessing expertise and broad regulatory and remedial powers . . . a court should be reluctant to interfere[.]" Appellants' Br. at 47 (citing *Sunrise Energy, LLC v. FirstEnergy Corp.*, 148 A.3d 894, 903 (Pa.Cmwlth. 2016), and quoting *Feingold v. Bell of Pa.*, 383 A.2d 791, 793 (Pa. 1977)). Appellants assert that the legislature has vested DLI with exclusive jurisdiction to determine whether they have violated the PWA. *Id.* at 48-49 (citing *500 James Hance Ct.*, 33 A.3d at 555). Appellants also argue that the PWA provides specific remedies for violations – damages and debarment – that are preemptive of any other remedies. *Id.* at 43-44; Appellants' Reply Br. at 7. They quote the Supreme Court in *Worth*, as stating the PWA "is clear and preemptive of other sections and regulations." Appellants' Br. at 43.

Appellants further argue this case stands in contrast to those in which criminal prosecution follows an agency's finding of liability under a civil statute because here, DLI has not made an initial finding of liability. *Id.* at 49.

_____

[9] Appellants' guilty pleas did not waive their challenge to the court's jurisdiction. *See Commonwealth v. Brown*, 240 A.3d 970, 972 (Pa.Super. 2020).

Appellants argue that without such a predicate finding, the Commonwealth cannot prove they failed to pay their employees the wages required by the PWA. Appellants cite, as persuasive authority, **Glenn O. Hawbaker, Inc. v. Dep't of Transp.**, No. 138 M.D. 2021, 2022 WL 1592589, at *1 (Pa.Cmwlth. Ct. Jan. 19, 2022) (unpublished memorandum). Appellants claim the Commonwealth Court acknowledged in that case that when criminal wage theft charges are rooted in the PWA, the DLI is the only body authorized to adjudicate the matter. Appellants' Reply Br. at 12-13.

Appellants contend the legislature could not have intended violations under the PWA to be the basis for criminal liability because the PWA authorizes only one criminal penalty – a misdemeanor charge for certifying a false payroll – and limits the authority of the OAG to collecting liquidating damages. Appellants' Br. at 44-45; Appellants' Reply Br. at 14-16. Appellants point to other statutory schemes that permit both civil and criminal penalties arising from the same transgression and argue those statutes expressly contemplate or authorize parallel criminal punishment. Appellants' Reply Br. at 16 n.7, 17-18. Appellants emphasize that Pennsylvania's Crime Code does not include an independent wage theft statute. Appellants' Br. at 47 n.21.

Appellants contend the instant case is the first instance in which the Commonwealth has attempted to circumvent the DLI through criminal prosecution for wage theft and that allowing such a prosecution will "nullify" DLI's role in PWA enforcement, which they consider an absurd result. Appellants' Br. at 45; Appellants' Reply Br. at 16-17. And, according to

- 18 -

Appellants, a wage dispute is generally a civil matter, as it is considered a debt arising from breach of contract. Appellants' Br. at 45. Appellants rely on **Mitchneck**, 198 A. at 464, to argue that this Court has previously held that wages are not the property of another in the context of theft statutes. Appellants' Br. at 45-46. Appellants claim allowing their judgments of sentence to stand would set the precedent for "any breach of contract action [to be] turned into a theft case." Appellants' Reply Br. at 17.

We received a brief from amici curiae, the four Pennsylvania chapters of the national organization Associated Builders and Contractors, Inc.[10] They represent more than 1300 construction contractors and related firms doing business in Pennsylvania. Their arguments echo those of Appellants. Amici stress this prosecution is unprecedented, as they claim "no construction contractor has ever before been criminally prosecuted for allegedly misclassifying or otherwise underpaying employees in the 60-year history of Pennsylvania's Prevailing Wage Act." Amici Br. at 5. Amici argue there are 13 states, including Pennsylvania, that have enacted prevailing wage laws that provide for only civil penalties for wage underpayments or misclassifications.[11]

---

[10] The four Pennsylvania chapters include the Western Pennsylvania Chapter, the Central Pennsylvania Chapter, the Eastern Pennsylvania Chapter, and the Keystone Chapter. Goodco is a member of the Central Pennsylvania Chapter. **See** Amici Br. at 1 n.1.

[11] Amici cite: Delaware, Del. Code Ann. tit. 29, § 6960; Hawaii, Haw. Rev. Stat. § 104-25; Illinois, 820 ILCS 130/11 (from Ch. 48, par. 39s-11); Maine, Me. Rev. State. Ann. tit. 26 § 1312; Maryland, Md. Code Ann., State Fin. &
*(Footnote Continued Next Page)*

Amici assert that prevailing wage violations have never before been criminally prosecuted in these states. *Id.* at 8-9. Amici note that criminal prosecutions have been brought in "[a] few" other states but claim those states have specifically enacted statutes criminalizing wage underpayments or misclassification. *Id.* at 8 n.8. Amici argue that even at a federal level, criminal prosecution of federal contractors for alleged wage underpayments has been limited only to that brought under express legislation dedicated to preventing wage underpayments. *Id.* at 8 (citing the Davis-Bacon Act, 40 U.S.C. §§ 3141-3148, and the Copeland Act, 18 U.S.C. § 1875).

Amici further argue that a *prima facie* case for any theft under the crimes code must be dependent on a prior finding by the DLI as to what wages the employees was entitled. *Id.* at 10-11. Amici contend the OAG accepted a guilty plea in this case "because the elements of the theft charges . . . could not be satisfied, in the absence of any findings by the administrative agency with exclusive jurisdiction to make such findings under the PWA, [*i.e.*, DLI]." *Id.* at 12.

Appellants' arguments go to the subject matter jurisdiction of the Court of Common Pleas. The question of subject matter jurisdiction is one which

---

Procurement, § 17-201; Missouri, Mo. Revised Stat. § 290.250; Montana, Mont. Code Ann. § 18-2-407; Nebraska, Neb. Rev Stat. § 29-436; Nevada, Nev. Rev. Stat. 338.035; Oregon, Or. Rev. Stat. § 279C.855(1); Pennsylvania, 43 P.S. § 165-10; Rhode Island, R.I. Gen. Laws § 31-13-13; Texas, Tex. Gov't Code Ann. § 2258; and Washington, Wash. Rev. Code § 39.12.065. For New Mexico, they cite an administrative provision, N.M. Admin. Code § 11.2.12. **See** Amici Br. at 14.

may be raised at any time and one over which we exercise *de novo* and plenary review. ***In re Admin. Ord. No. 1-MD-2003***, 936 A.2d 1, 5 (Pa. 2007).

Subject matter jurisdiction refers to the court's competency "to determine controversies of the general class to which the case presented for consideration belongs." ***Id.*** It is conferred by constitution or statute. ***Id.*** Pennsylvania's Constitution imbues the Courts of Common Pleas with "unlimited original jurisdiction in all cases except as may otherwise be provided by law." Pa. Const. Art. V, § 5(b). The General Assembly has refined this broad grant of jurisdiction to extend to "unlimited original jurisdiction of all actions and proceedings," except "where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503[12] (relating to reassignment of matters) vested in another court of this Commonwealth[.]" 42 Pa.C.S.A. § 931(a).[13]

---

[12] Section 503 empowers the Supreme Court to provide by general rule for the assignment or reassignment of matters among the courts and magisterial district judges and provides procedures for its doing so. ***See*** 42 Pa.C.S.A. § 503.

[13] Section 931 of the Judicial Code states:

> **(a) General rule.--**Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings

*(Footnote Continued Next Page)*

To determine whether an agency has jurisdiction over a particular subject matter, to the exclusion of the Courts of Common Pleas, we look to the text of the relevant legislative enactments. *See*, *e.g.*, *Consol. Rail Corp. v. City of Harrisburg*, 842 A.2d 369, 377 (Pa. 2004) (finding text of Public Utility Code gave Public Utility Commission "exclusive power" to determine the relocation of facilities at rail-highway crossings, but not exclusive jurisdiction over cost allocation); *Hollinger v. Dep't of Pub. Welfare*, 365 A.2d 1245, 1251 (Pa. 1976) (holding text of Public Employee Relations Act gave exclusive jurisdiction to labor relations board to determine whether an unfair labor practice had occurred). In performing this analysis, we are guided by the following principles of statutory construction.

> When construing a statute, we must ascertain and effectuate the intent of the General Assembly in enacting the statute. 1 Pa.C.S.A. § 1921(a). In this regard, we are instructed: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *id.* Thus, the best indication of the General Assembly's intent in enacting a statute may be found in its plain language. *Martin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 588 Pa. 429, 438, 905 A.2d 438, 443 (2006). In addition, we are to read the sections of a statute together and

---

heretofore cognizable by law or usage in the courts of common pleas.

**(b) Concurrent and exclusive jurisdiction.--**The jurisdiction of the courts of common pleas under this section shall be exclusive except with respect to actions and proceedings concurrent jurisdiction of which is by statute or by general rule adopted pursuant to section 503 vested in another court of this Commonwealth or in the magisterial district judges.

42 Pa.C.S.A. § 931(a), (b).

construe them to give effect to all of the statute's provisions. 1 Pa.C.S.A. § 1921(a).

*White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 731 (Pa. 2012).

We are further mindful that where general and specific statutes on the same subject exist, "the two shall be construed, if possible, so that effect may be given to both." 1 Pa.C.S.A. § 1933. Only where a conflict between statutory provisions is irreconcilable will we deem a special provision to prevail and construe it as an exception to the general provision. *Id.* Even in such a case we will not find the special provision to be an exception to the general one if "the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail." *Id.*

Appellants' challenge to the Court of Common Pleas' subject matter jurisdiction over this prosecution is utterly meritless. The Courts of Common Pleas may be divested of original jurisdiction only if a statute or general rule of the Supreme Court has vested exclusive original jurisdiction in another **court**. Appellants' claim is that the Court of Common Pleas here lacked jurisdiction because of DLI's statutory role in PWA proceedings. But DLI is not a "court of this Commonwealth," and Appellants have not attempted to claim that it is. Appellants were charged under the Crimes Code, and "all courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code." *Commonwealth v. Gross*, 101 A.3d 28, 32 (Pa. 2014) (quoting *Commonwealth v. Bethea*, 828 A.2d 1066, 1074 (Pa.

2003)). Appellants have not identified anything removing that jurisdiction to another court.

Furthermore, even if DLI were a court, the text of the PWA indicates that it does not give DLI exclusive jurisdiction over every action touching on the PWA's subject matter. On its face, the PWA preserves the rights of workers to bring civil actions for PWA violations in the Courts of Common Pleas. 43 P.S. § 165-13. It also creates a specific criminal offense for falsely certifying payrolls. *Id.* at § 165-10(c). The very language of the PWA itself vests tribunals other than DLI with original jurisdiction to enforce its provisions.

Indeed, Appellants have not brought to this Court's attention any portion of the text of the PWA that we might construe as vesting DLI with exclusive jurisdiction over all matters involving the PWA, or more to the point, over criminal cases. "In the absence of a clear legislative mandate, laws are not to be construed to decrease the jurisdiction of the courts." ***Beneficial Consumer Disc. Co. v. Vukman***, 77 A.3d 547, 552 (Pa. 2013). Without a clear legislative mandate to the contrary, we will not construe the mere existence of the PWA as indicating the General Assembly's intent to decrease the jurisdiction of the Courts of Common Pleas. ***See id.***

Nor do we find an obvious or irreconcilable conflict between the text of the PWA and the theft crime at issue. We are therefore obliged to give full force and effect to both. 1 Pa.C.S.A. §§ 1928(c), 1932, 1933. That there is a more specific statute prescribing a civil penalty for a failure to pay prevailing wages does not create a conflict with the imposition of criminal punishment

- 24 -

flowing from the terms of a more general theft statute that, in appropriate circumstances, can apply to wage theft. *In Int. of R.A.F.*, 149 A.3d 63, 67 (Pa.Super. 2016); *see also Bershad*, 693 A.2d at 1308-09 (finding no conflict between charge for theft by failure to make required disposition of funds received and a penal provision of the Tax Reform Code).

The cases cited by Appellants do not declare that DLI has exclusive jurisdiction over the subject matter of the PWA. In *500 James Hance Ct.*, the Pennsylvania Supreme Court described DLI's Bureau of Labor Law Compliance as "a unit of [DLI], which is the Commonwealth agency charged with administration and enforcement of the Pennsylvania Prevailing Wage Act." 33 A.3d at 557. In so stating, the Court was not making a pronouncement regarding jurisdiction, but simply identifying the plaintiff in the case. Appellants also misquote *Worth.* That case did not hold that the PWA "is clear and preemptive of other sections and regulations," but held that the section of the PWA requiring payment to contractors despite subcontractors' violations was unambiguous and preemptive of other, allegedly conflicting, sections of the PWA – primarily § 10(b) – and PWA regulations. *Worth*, 938 A.2d at 245 ("Because the language of § 10(a) is clear and preemptive of other sections and regulations, we cannot disregard it"). *Worth* did not involve any conflict between the PWA and another statute.

The Commonwealth Court's decision in *Hawbaker* – which is not controlling here, as decisions of the Commonwealth Court are only persuasive authority in this Court – does not indicate otherwise, even though it addresses

- 25 -

a "jurisdictional" challenge regarding the PWA. There, Hawbaker, a highway construction contractor, had pleaded *nolo contendere* to four counts of theft for failure to make required disposition of funds received for withholding fringe benefit payments from its employees in violation of, among other things, the PWA. *Hawbaker*, 2022 WL 1592589, at *1. The Department of Transportation ("DOT") instituted debarment proceedings based on the contractor's plea of *nolo contendere* to theft charges rooted in PWA violations,[14] and the contractor turned to the Commonwealth Court, seeking contempt sanctions or a preliminary injunction.

The Commonwealth Court granted the preliminary injunction. It questioned DOT's "jurisdiction" to institute debarment proceedings, pointing out that the PWA provides for debarment mechanisms through DLI, not DOT. *See id.* at *8. The court observed that while DOT regulations provide for debarment proceedings based on a plea of no contest to theft, the theft charges were based on PWA violations, and unlike the DOT regulations, the PWA requires a finding of intentional violations before debarment. Therefore, in *Hawbaker*, the Commonwealth Court did not express an opinion on the jurisdiction of the court of common pleas over criminal proceedings. That was

---

[14] Like Appellants, Hawbaker had been charged with "theft by failure to make required disposition of funds received, in violation of Section 3927 of the Crimes Code, 18 Pa.C.S. § 3927.4" *Hawbaker*, 2022 WL 1592589, at *1. The Complaint in that case alleged "that for calendar years 2015 through 2018, Hawbaker withheld fringe benefit payments from its employees in violation of the PWA and the Davis-Bacon Act." *Id.* Hawbaker's *nolo contendere* plea to the charges was not at issue in the appeal to the Commonwealth Court.

not the issue. Rather, the question was whether DOT could conduct debarment proceedings for PWA violations.

Appellants argue this Court should not apply the theft statute to agreements or legal obligations created by the PWA, because doing so would interfere with the "pervasive regulatory scheme and governmental agency possessing expertise and broad regulatory and remedial powers." **See** Appellants' Br. at 48 (quoting **Feingold**, 383 A.2d at 793). **Feingold** was decided based on the rule requiring exhaustion. An aggrieved party is required to exhaust administrative remedies before bringing the matter to court. **See** **Jackson v. Centennial Sch. Dist.**, 501 A.2d 218, 220 (Pa. 1985); **Ostrov v. I.F.T., Inc.**, 586 A.2d 409, 413 (Pa.Super. 1991). Our Supreme Court has stated:

> When the Legislature has seen fit to enact a pervasive regulatory scheme and to establish a governmental agency possessing expertise and broad regulatory and remedial powers to administer that statutory scheme, a court should be reluctant to interfere in those matters and disputes which were intended by the Legislature to be considered, at least initially, by the administrative agency.

**Feingold**, 383 A.2d at 793. The Supreme Court has acknowledged that it has been inconsistent in characterizing the rule of exhaustion as jurisdictional or merely a prerequisite to a court's exercise of jurisdiction. **White**, 53 A.3d at 726 n.11.[15]

_____

[15] In both **White** and **Jackson**, the Supreme Court discussed the rule requiring exhaustion in concert with Section 1504 of the Statutory
*(Footnote Continued Next Page)*

- 27 -

The rule requiring exhaustion is not absolute, as it does not apply when the administrative remedy is inadequate. ***White***, 53 A.3d at 726 n.10. "[T]he rule should be applied only where the available administrative remedies are adequate with respect to the alleged injury sustained and the relief requested." ***Feingold***, 383 A.2d at 795-96 (finding rule requiring exhaustion did not apply because Public Utility Commission had no authority to award damages); ***see also Frye Constr., Inc. v. City of Monongahela***, 584 A.2d 946, 948-49 (Pa. 1991) (finding rule requiring exhaustion did not apply when jurisdiction was not exclusive and zoning regulations did not provide injunctive power). Furthermore, the existence of a statutory remedy does not foreclose a distinct *statutory* cause of action. ***See White***, 53 A.3d at 734 (holding Title Insurance Act foreclosed common law claims but did not prevent plaintiff from bringing claims under Unfair Trade Practices and Consumer Protection Law).

The rule requiring exhaustion of administrative remedies does not present a jurisdictional bar to the instant criminal prosecution. First, the rule applies to actions based in common law or equity, rather than in a statute; here, the Commonwealth of Pennsylvania brought charges under the Crimes Code. This is a separate statute, duly enacted by the legislature, which must be given full effect. ***See White***, 53 A.3d at 734.

---

Construction Act, which provides that the existence of a statutory remedy is presumed to be exclusive of any other remedy, such as in common law or equity, unless the legislature states otherwise. ***See White***, 53 A.3d at 731-32; ***Jackson***, 501 A.2d at 220.

Second, the civil avenues for relief provided by the PWA are not "adequate with respect to the alleged injury sustained and the relief requested." The PWA is remedial. **Borough of Youngwood**, 947 A.2d at 731.[16] The goal of the PWA is to protect workers, and the remedies are limited to three-year disbarment, damages in the amount that the contractor should have paid in the first place, and, if a payroll was falsely certified, prosecution for a misdemeanor offense.

In contrast, the goals of criminal punishment are retribution and deterrence. **See Kennedy v. Mendoza-Martinez**, 372 U.S. 144, 168 (1963). In addition, in a criminal proceeding, the prosecution brings charges on behalf of the entire citizenry of the state; no such avenue for relief is provided to Pennsylvania's citizens under the PWA. **See** 18 Pa.C.S.A. § 104 (stating one general purpose of Crimes Code is "[t]o forbid and prevent conduct that unjustifiably inflicts or threatens substantial harm to individual or public interest").

Although criminal punishment is more severe than its civil counterpart, guilt must be found by a jury beyond a reasonable doubt, which is a more stringent standard than utilized in administrative proceedings. **See Jordan v. Gore**, 431 A.2d 300, 303 (Pa.Super. 1981). These same differences lead us to conclude that the rule requiring exhaustion does not apply to bar criminal

---

[16] **See also Hudson v. United States**, 522 U.S 93, 99, 103-04 (1997) (noting that the authorization of administrative agency to impose penalty is *prima facie* evidence that the penalty is a civil sanction, and that money penalties and debarment have not historically been viewed as punishment).

prosecution where only civil remedies exist, at least insofar as there is no legislative directive on point.

We additionally differentiate Appellants' argument that the Commonwealth cannot make out a *prima facie* case of liability under the PWA without a prior adjudication by DLI,[17] from the doctrine of "primary jurisdiction." This doctrine comes into play "where the administrative agency cannot provide a means of complete redress to the complaining party and yet the dispute involves issues that are clearly better resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute." ***Ostrov***, 586 A.2d at 413. Under this doctrine, a court will "stay[] judicial action until the administrative body has expressed its views upon such collateral issues as are within its competence." ***E.L.G. Enters. Corp. v. Gulf Oil Co.***, 435 A.2d 1295, 1296–97 (Pa. 1981).

The doctrine of primary jurisdiction is decidedly a misnomer, as the decision to bifurcate a civil proceeding in court and await a determination by an agency is not a jurisdictional issue, but one of judicial discretion. ***See White***, 53 A.3d at 728 n.14. Furthermore, our Supreme Court has cautioned that a trial court should only defer to an agency's primary jurisdiction where "it is a complex matter requiring special competence," and that courts should not be too hasty in referring a matter to an agency "whenever a controversy

---

[17] We note the contradiction between Appellants' arguments that DLI has exclusive subject matter jurisdiction and that the trial court has jurisdiction after the Secretary makes an adjudication.

remotely involves some issue falling arguably within the domain of the agency's expertise," as "[e]xpertise is no talisman dissolving a court's jurisdiction." **Elkin v. Bell Tel. of Pa.**, 420 A.2d 371, 377 (Pa. 1980). The court must also consider whether the issue is currently before the agency, and the delay that would come from bifurcating the action. **See E.L.G. Enters. Corp.**, 435 A.2d at 1297.

Thus, Appellants' argument that the trial court must defer to a DLI adjudication, and the Commonwealth must await adjudication in DLI proceedings prior to instituting criminal charges, is not a jurisdictional argument. We note that the court, and not a jury, acts as a gatekeeper to determine whether the Commonwealth can present *prima facie* evidence of defendant's legal obligation. Moreover, contractor-defendants are free to bring the complexities of the PWA or contradictions in DLI guidance as a defense to the *mens rea* required by the theft statute.

Finally, we reject Appellants' contentions that allowing criminal prosecution for failure to pay prevailing wages will "nullify" DLI's role in PWA enforcement, erode the distinction between criminal actions and breach of contract cases, and be contrary to this Court's precedent in **Mitchneck**. Policy concerns cannot control our decision when we are able to read the two statutes compatibly.

Further, as discussed above, the statute for theft by failure to make required disposition of funds received was enacted in specific response to **Mitchneck**. It was intended to provide an avenue to impose criminal

punishment on conduct previously pigeon-holed as breach of contract. Furthermore, workers already can bypass DLI and bring their civil PWA claims in the Courts of Common Pleas, **see** 43 P.S. § 165-13, and prosecutors already have discretion to decide whether to withhold charges for theft by failure to make required disposition of funds received if the conduct only makes out a breach of contract claim. **See Commonwealth v. Stipetich**, 652 A.2d 1294, 1295 (Pa. 1995). In addition, given the higher burden of proof necessary to prove the criminal charge, we are unpersuaded that the OAG will investigate and prosecute each allegation of a PWA violation as theft such that the administrative scheme regulated by DLI will be nullified.

### C.    Vagueness and Due Process

In their second and third issues, Appellants raise two constitutional challenges: a vagueness challenge and a due process challenge. We first must determine whether Appellants' guilty pleas waived these issues. When a defendant enters an "open" guilty plea – one where there is no plea agreement as to the sentence, such as occurred here – the defendant waives all issues on appeal except the jurisdiction of the court, the validity of the guilty plea, the legality of the sentence, and the discretionary aspects of the sentence. **See Commonwealth v. Brown**, 240 A.3d 970, 972 (Pa.Super. 2020).

Neither constitutional claim relates to the jurisdiction of the court, the validity of the plea, or the discretionary aspects of sentencing. The only possible category that could save them from waiver is the legality of the sentence, which is non-waivable. Whether a claim implicates the legality of a

sentence is a question of law. **Eisenberg**, 98 A.3d at 1276. Our scope of review is plenary, and our standard is *de novo*. **Commonwealth v. Rodriguez**, 174 A.3d 1130, 1147 (Pa.Super. 2017).

In **Commonwealth v. Prinkey**, 277 A.3d 554 (Pa. 2022), the Pennsylvania Supreme Court recently explained what constitutes an illegal sentence. The Court reviewed at length its precedents and distilled four types of claims that implicate the legality of a sentence. **See id.** at 561-62. The Court noted that for all four categories, "the inquiry is whether, assuming the appellant's claim prevails, the result would be that the trial court lacked authority to impose the sentence at issue." **Id.** at 563. The first type is "a claim that a sentence was imposed pursuant to a facially unconstitutional sentencing statute[.]" **Id.** at 562. The second type "encompasses allegations that a sentence was imposed without the fulfillment of statutory preconditions to the court's sentencing authority." **Id.** The third type is a claim of a substantive constitutional restriction on a court's power to apply the statutory sentence in the circumstances at bar. **Id.** The fourth type is a claim that "the statutory support for the underlying conviction is void *ab initio*." **Id.** at 563. The Court explained that even though the fourth category is most directly targeted at the conviction, such an argument ultimately goes to the legality of the sentence because "[t]he alternative is for courts to accept as legal a sentence which is grounded upon an illegal conviction." **Id.** (quoting **Commonwealth v. Spruill**, 80 A.3d 453, 464 (Pa. 2013) (Saylor, J., concurring)).

In their vagueness challenge, Appellants' claim that the PWA, "used in combination with the theft statutes, is unconstitutionally vague as applied to this case[.]" Appellants' Br. at 50. They claim that the PWA had never been used as a basis for a criminal prosecution and therefore "the average citizen" had no notice that criminal liability could result from a PWA violation. *Id.* at 53. They further claim the lack of clear guidance on how wages should be paid under the PWA renders it unconstitutionally vague in the criminal context.[18]

Appellants' vagueness challenge is not a challenge to the legality of the sentence. Appellants were convicted of theft, and Appellants do not challenge the theft statute as vague. Rather, they argue the PWA is unconstitutionally vague "as applied" here because, according to Appellants, no statute or rule sets forth a specific rate for a particular worker on a given project, and DLI has resolved such disputes on a case-by-case basis. They do not challenge the statute of conviction – theft. Their challenge does not implicate the legality of their sentences. Appellants therefore waived it when they pleaded guilty.

Appellants next claim the convictions violated due process because Appellants were deprived of their statutory rights under the PWA to notice, a

_____

[18] Amici argue criminal prosecution for prevailing wage violations is unfair to contractors because "the laws and regulations governing prevailing wage requirements are very complicated and difficult for employers to navigate" Amici Br. at 2. According to Amici, prevailing wage projects impose "dozens or even hundreds of related special job categories, grades of sub-groups, fine distinctions of fringe benefits, and largely unwritten jurisdictional work rules." *Id.* at 7. Amici claim the prevailing wage scheme is particularly confusing to non-union contractors, which constitute the majority of the construction industry's employees in Pennsylvania. *Id.* at 6-7.

hearing before L&I, and an opportunity to cure. They claim that a criminal proceeding is not an "orderly proceeding adapted to the nature of this case," as required by the Due Process Clause. *Id.* at 60 (cleaned up). This argument goes to alleged defects in Appellants' convictions, and not the imposition of sentence. Therefore, we find Appellants' constitutional due process challenge also does not implicate the legality of Appellants' sentences and was waived when Appellants entered pleas of guilty.

Moreover, Appellants' constitutional arguments are contrary to their guilty pleas. When Appellants pleaded guilty, they admitted that they knowingly, willfully, or recklessly failed to fulfill their legal obligations under the PWA. They fully admitted to doing "what the Commonwealth said they did," *i.e.*, the allegations made against them on the record. These allegations include that Good had been warned previously by DLI that the use of pre-determined ratios to under-classify workers was impermissible, and that Good instructed his employees to continue this practice despite complaints from the workers that the ratios did not reflect the work they performed. Their admissions contradict Appellants' argument that they violated the PWA because it was too vague for them to understand, *i.e.*, that they were deprived of notice of the proscribed conduct. Appellants also waived their right to have the Commonwealth prove those allegations before a jury of their peers and the right to lodge a defense. This undermines Appellants' argument that the criminal prosecution violated their right to due process, *i.e.*, their right to notice and the opportunity to be heard.

We find **Class v. United States**, 138 S.Ct. 798 (2018), distinguishable. In that case, when pleading guilty in federal court, the defendant expressly waived the right to appeal various issues.[19] **Class**, 138 S.Ct. at 802. The defendant then raised on appeal an argument that the statute prohibiting the possession of firearms, under which he was convicted, violated the Second Amendment. The Supreme Court observed that "[t]he agreement said nothing about the right to raise on direct appeal a claim that the statute of conviction was unconstitutional." **Id.** The Court also noted the defendant's argument had nothing to do with the substance of his guilty plea, noting the "constitutional claims . . . do not contradict the terms of the indictment or the written plea agreement." **Id.** at 804.

Here, unlike Class, when Appellants pleaded guilty, they expressly waived the right to challenge on appeal any issue except the court's jurisdiction, the validity of his plea, the legality of his sentence, and the effectiveness of his counsel. Furthermore, Appellants' pleas of guilty belie their arguments that they lacked notice of the prohibited conduct or were deprived the opportunity to be heard. Given our state's jurisprudence in this area, and

_____

[19] Class waived

> (1) all defenses based upon the statute of limitations; (2) several specified trial rights; (3) the right to appeal a sentence at or below the judicially determined, maximum sentencing guideline range; (4) most collateral attacks on the conviction and sentence; and (5) various rights to request or receive information concerning the investigation and prosecution of his criminal case.

**Class**, 138 S. Ct. at 802.

the factual distinction between this case and **Class**, we conclude that Appellants waived their vagueness and due process issues.

Were the issues not waived, we would still find they warranted no relief. A vagueness challenge stems from the right to due process:

> Due process demands that a statute not be vague. A statute is vague if it fails to give people of ordinary intelligence fair notice as to what conduct is forbidden, or if they cannot gauge their future, contemplated conduct, or if it encourages arbitrary or discriminatory enforcement. A vague law is one whose terms necessarily require people to guess at its meaning. If a law is deficient – vague – in any of these ways, then it violates due process and is constitutionally void.
>
> By contrast, to be valid, a penal statute must set forth a crime with sufficient definiteness that an ordinary person can understand and predict what conduct is prohibited. The law must provide reasonable standards which people can use to gauge the legality of their contemplated, future behavior.

**Commonwealth v. Habay**, 934 A.2d 732, 737 (Pa.Super. 2007) (quoting **Commonwealth v. Thur**, 906 A.2d 552, 561 (Pa.Super. 2006)); **see also Commonwealth v. Herman**, 161 A.3d 194, 204 (Pa. 2017). There is a strong presumption that legislation is constitutional, and the party asserting otherwise bears the burden of proof. **Habay**, 934 A.2d at 737-38. "Accordingly, this Court will strike the statute in question only if [the appellant] convinces us that it clearly, palpably and plainly violates the federal or state constitutions." **Id.** at 738 (quoting **Thur**).

Appellants assert the PWA is vague as applied to them. Where a party asserts "a statute is vague as applied," they "contend[] the law is vague in regard to the particular conduct of the individual challenging the statute." **Id.**

In **Allied Mechanical & Electrical, Inc.**, the Commonwealth Court considered whether the PWA "was unconstitutionally vague regarding the appropriate classification of laborers' work such that the Secretary violated Allied's right to due process by finding that it had intentionally violated said Act." 923 A.2d 1220, 1228-29 (Pa.Cmwlth. 2007). The Court observed that "neither the Act nor its regulations provide a specific definition of what tasks constitute laborers' tasks on any given prevailing wage project." **Id.** at 1229. It observed that the regulations provide definitions for "classification" and "craft," the latter of which depends on "custom and usage," wording which the Court had previously implemented and upheld. **Id.**

In addition, the Court noted that the conduct at issue that constituted a violation of the PWA was not due to the PWA's failure to provide a specific definition of laborers' tasks, but rather Allied's use of a predetermined ratio:

> . . . Allied's violation of the Act was premised upon its utilization of a set 6:2 ratio for prevailing wage projects, regardless of the work being performed, its continued use of this ratio even after being advised by Bureau representatives that the same was improper[,] and its advice to employees to juggle their timecards but still end up with this same ratio.

**Id.** at 1230. At the time, Allied employed Good as Vice President and he had been involved in the investigation. **See id.** at 1223-24, 1226.

We are persuaded by the Commonwealth Court's rationale, and find it applies equally to the case before us. Appellants complain that the PWA is vague because the classification of workers is confusing. However, Appellants did not simply misclassify workers, but forced workers to classify their hours

according to a pre-determined ratio, despite the knowledge that it did not accurately reflect the work being performed and despite having been told that imposing such a ratio was improper. Although the regulations provide that workers may be subject to two different classifications during a single workday, Appellants pleaded guilty to understanding that an across-the-board pronouncement that workers could not classify an entire day at the higher rate of pay was impermissible. We therefore cannot countenance the argument that Appellants did not have due notice of the prohibited conduct.

We would likewise find no merit to Appellants' claim that they were deprived of due process because PWA procedures were not followed. "[P]rocedural due process is a flexible notion which calls for such protections as demanded by the individual situation, [and] the essential requisites are notice and meaningful opportunity to be heard." ***Commonwealth, Dep't of Transp., Bur. of Driver Licensing v. Clayton***, 684 A.2d 1060, 1064 (Pa. 1996). The hearing must be "meaningful and appropriate to the nature of the case." ***Id.*** at 1065 (quotation marks and citation omitted).

Appellants' argument does not make out a claim that they did not have due notice of the prosecution or a meaningful opportunity to be heard. Appellants do not contend that during their prosecution, they were precluded from arguing a defense related to the PWA in the same manner as they could have done before the DLI. The record does not support any violation of procedural due process in this case. ***Cf. Leonard S. Fiore, Inc.***, 633 A.2d at 1115 (holding procedural due process was violated when defendant was only

given 20 days' notice to justify a tax exemption after 10 years of litigation focused on other issues, because "[d]ue process requires that notice of hearing be reasonable in terms of opportunity to prepare to answer the issues raised by the Commonwealth for the first time at a late stage of the litigation").

### D.    Discretionary Sentencing Claims

Good lodges five challenges to the court's exercise of discretion in imposing sentence.[20] Good argues (1) the court failed to sufficiently state the reasons for the sentence on the record; (2) the court failed to consider all relevant sentencing factors, and considered inappropriate factors; (3) the court only considered, and over-inflated, the seriousness of the crime; (4) the court's sentence was not individualized, but pre-determined and the result of bias; and (5) the aggregate sentence was unreasonable and excessive.

Before we reach these claims, we must assess whether Good has raised a substantial question that the court violated a provision of the Sentencing Code or that the sentence is contrary to the norms underlying the sentencing process. *See* 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Mouzon*, 812 A.2d 617, 627 (Pa. 2002); *see also Commonwealth v. King*, 182 A.3d 449, 453 (Pa.Super. 2018) (listing the requirements for this Court to reach the merits of a discretionary sentencing claim).[21] A claim that the trial court failed to

---

[20] Good did not waive his challenge to the discretionary aspects of his sentence when he pled guilty. *See Brown*, 240 A.3d at 972.

[21] The other requirements – a timely appeal, preservation of the issue in the court below, and the inclusion of a Rule 2119(f) statement in the appellate brief – have all been met. *See King*, 182 A.3d at 453.

state adequate reasons for the sentence on the record raises a substantial question. *See Commonwealth v. Wellor*, 731 A.2d 152, 155 (Pa.Super. 1999). Likewise, a claim of excessiveness, in conjunction with a claim that the court did not consider the relevant sentencing criteria and/or considered improper factors, poses a substantial question. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1272-74 (Pa.Super. 2013). Finally, the claim that the sentence was the result of bias and prejudice, and not individualized, also constitutes a substantial question. *See Commonwealth v. Luketic*, 162 A.3d 1149, 1162 (Pa.Super. 2017). We therefore turn to the merits of Good's claims.

We will not disturb a sentence absent an abuse of discretion. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). Trial courts have broad discretion over sentencing because they are "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Mouzon*, 812 A.2d at 620. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Walls*, 926 A.2d at 961 (citation omitted).

Further, where the court has imposed a sentence falling within the sentencing guidelines, we will only vacate and remand where it applied the guidelines erroneously or "the case involves circumstances where the

application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c). In making this determination, we will consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission

42 Pa.C.S.A. § 9781(d). Our scope of review is plenary, and we may review the entire record. *Walls*, 926 A.2d at 961 n.2.

### 1. Sentencing Factors

We have reorganized Good's issues somewhat, for ease of discussion. Good argues the court failed to adequately consider the sentencing factors under 42 Pa.C.S.A. § 9721(b) and whether probation was warranted pursuant to 42 Pa.C.S.A. § 9722. Good claims the court should have concluded there was no need for the court to impose incarceration to protect the public because his crime was non-violent, and in his view, he presented overwhelming evidence of his good character. He emphasizes that four of the victims supported him at sentencing, and one of the victims informed the court that Goodco was the best place he had ever worked. Good also argues the court failed to consider his full payment of restitution before sentencing, his lack of criminal record, and his capacity for rehabilitation. Good claims that while the court referenced the PSI, the PSI did not meet the requirements as set forth in *Commonwealth v. Goggins*, 748 A.2d 721, 728-29 (Pa.Super. 2000) (*en*

*banc*). Good maintains it provided only basic information and mentioned none of Good's history or characteristics.

The Sentencing Code requires the trial court to follow the general principle that the sentence "should call for confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b); *see Mouzon*, 812 A.2d at 620. The Sentencing Code also provides a list of factors that weigh in favor of an order of probation. *See* 42 Pa.C.S.A. § 9722.[22] The court must also consider the mitigated, standard,

_____

[22] The statute provides:

> The following grounds, while not controlling the discretion of the court, shall be accorded weight in favor of an order of probation:
>
> (1) The criminal conduct of the defendant neither caused nor threatened serious harm.
>
> (2) The defendant did not contemplate that his conduct would cause or threaten serious harm.
>
> . . .
>
> (6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained.
>
> (7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime.
>
> (8) The criminal conduct of the defendant was the result of circumstances unlikely to recur.

*(Footnote Continued Next Page)*

and aggravated ranges suggested by the sentencing guidelines. 42 Pa.C.S.A. § 9721(b); *see* 204 Pa.Code §§ 303.1–303.18(c).

The record reflects that the trial court held a sentencing hearing at which Good made argument through counsel, exercised his right to allocution, and introduced 43 character letters and three character witnesses. The court acknowledged the recommendation of the probation office and was apprised by the Commonwealth that Good had paid full restitution. The court acknowledged the statutory maximum sentences, the sentencing guidelines' ranges, and the fact that Good had no prior criminal history. The court also stated it had read Good's sentencing memorandum and the PSI. The court remained engaged throughout the sentencing proceeding. When Good argued his post-sentence motion, the court acknowledged that at the sentencing hearing Good had apologized for his conduct, argued for a probationary sentence, introduced character letters, and paid restitution "so that the victims can be made whole." N.T. at 11. On this record, we cannot conclude the court did not consider all relevant sentencing criteria.

---

(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime.

(10) The defendant is particularly likely to respond affirmatively to probationary treatment.

. . .

(12) Such other grounds as indicate the desirability of probation.

42 Pa.C.S.A. § 9722.

We find Good's argument that his PSI was inadequate to be waived by his failure to raise that issue in the trial court. If Good felt the PSI needed to be supplemented, Good should have raised the issue prior to appeal. Pa.R.A.P. 302(a). The court even asked defense counsel if the PSI was adequate, and defense counsel made no objection.

### 2. Statement for Reasons of Sentence

We next address Good's argument that the court failed to state its reasoning when imposing sentence. According to Good, the court only stated that it had observed the number of counts to which he pleaded guilty and the grading of the offenses, the corresponding offense gravity score, his prior record score, and the guidelines ranges. The court also stated that it had decided to sentence Good in the standard range of the sentencing guidelines rather than the aggravated range. However, Good contends that other than these statements, the court did not provide a single reason for its sentence. Good cites 42 Pa.C.S.A. § 9721(b) and **Commonwealth v. Flowers**, 149 A.3d 867 (Pa.Super. 2016), for support. He argues the court's reference to the PSI does not prove the court considered all relevant sentencing criteria. Good's Br. at 74 (citing **Commonwealth v. Coulverson**, 34 A.3d 135, 150 (Pa.Super. 2011)). Good also argues that the court's post-hoc explanation for the sentence in its Rule 1925(a) opinion does not cure its failure to articulate reasons at the time of sentencing.

The Sentencing Code requires a court to state the reasons for the sentence imposed, in open court at the time of sentencing. 42 Pa.C.S.A. §

- 45 -

9721(b); Pa.R.Crim.P. 704(C)(2). The court may meet this requirement by indicating that it "has been informed by the pre-sentencing report[,] thus properly considering and weighing all relevant factors." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa.Super. 2009) (cleaned up); ***see also Devers***, 546 A.2d at 18 ("Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors"); ***Commonwealth v. Fowler***, 893 A.2d 758, 766 (Pa.Super. 2006) (finding requirement for reasoning satisfied where court imposed sentence in the standard range and court stated it read the PSI, listened to the facts presented for sentencing, and the appellant's guilty plea).

Indeed, the Supreme Court has explained that a statement of reasons is not necessary where a PSI exists due to the presumption it creates that the court was fully informed:

> Having been fully informed by the [PSI], the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. **It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.**

***Devers***, 546 A.2d at 18 (emphasis added).

As discussed above, the court was apprised of all necessary facts, through the PSI, the testimony of three character witnesses, and the letters

- 46 -

of 43 other individuals who discussed their history with Good and relationship with him. The court was engaged in the sentencing process and stated that it had put "a bunch of thought" into its decision to sentence Good in the standard range, rather than the aggravated range. The record demonstrates that the court was aware of the sentencing considerations, and we therefore presume the court applied those facts to Good's sentence. *See id.* at 19 (holding that where court had ordered PSI, reviewed character letters, and had sufficient information, claim that court did not explain its sentence did not warrant remand because it was not "rational to believe that the sentencing judge could not have been so informed as to have arrived at a balanced judgment in imposing judgment").

The cases on which Good relies do not require remand. In **Coulverson**, while we found the court's discussion of its sentencing rationale to be cursory, we did not decide the appeal on that basis alone. 34 A.3d at 146. Rather, we observed "the record reveals scant consideration of anything other than victim impact and the court's impulse for retribution on the victims' behalf," and that some of the courts statements "strongly suggest[ed] its determination that the defendant should spend as much of his life in prison as the court could order," notwithstanding mitigating factors such as "the tragedy and dysfunction underlying [the defendant's] own life, his individual need for effective intervention, or any rehabilitation he might achieve." *Id.* at 148. We found the 90-year aggregate sentence imposed on a 19-year-old defendant was "manifestly excessive," not individualized, and "clearly unreasonable." *Id.*

at 150. As discussed below in conjunction with Good's other issues, we do not find Good's sentence to be manifestly excessive or that the court expressed a desire to sentence Good to the harshest extent possible, and the record does not reflect the court ignored the mitigating factors presented to it.

Nor does **Flowers** require relief. There, we vacated the sentence based on the trial court's failure to state any of its reasoning on the record at sentencing. **Flowers**, 149 A.3d at 877. **Flowers** is readily distinguishable, however, as in that case, there was no PSI, the testimony regarding information about the defendant took only two pages of the sentencing transcript, and the record lacked any indication the court had reviewed the facts necessary to make a sentencing determination. **Id.** at 874. The record here is extensive in comparison.

### 3. Impermissible Factors

Good argues the court's Rule 1925(a) opinion shows that it overinflated the seriousness of the crime, and that it "unlawfully sentenced [him] based on the seriousness of allegations that were dismissed as part of the plea," thereby violating his right to due process. Appellants' Br. at 69-70.[23] First, Good argues the court stated in its opinion it considered the fact that Good had underpaid his employees by $65,000. **Id.** at 69 (citing Trial Court Opinion, filed 8/10/21, at 7). Good argues that this was error, because while restitution

---

[23] Although Good did not raise these arguments to the trial court, we will not find waiver as the trial court's Rule 1925(a) opinion was authored after the case was appealed.

was set at that amount, Good claims he only pleaded guilty to five counts referencing underpayments of only $2,000 each. *Id.* at 69 (citing 18 Pa.C.S.A. § 3903(b)).[24] He asserts "[t]here is no evidentiary proof of the court's assertion that [he] stole $65,000 from his employees" and that he "agreed to pay restitution as a show of good faith and to resolve the case." *Id.* at 70.

We disagree with the contention that the court abused its discretion in considering $65,000 to be the amount of underpayment. Before the Commonwealth amended the Information, it substantiated the amount of underpayment in the schedules listed under the five counts for theft by failure to make required disposition of funds received. It presented *prima facie* evidence of Good's guilt at the preliminary hearing. The Amended Information, to which Good pleaded guilty, did not include the schedules or total amount, but stated that the amount Good failed to pay his employees exceeded $200 for each count; there was no maximum listed. During the plea colloquy, Good acknowledged that the factual basis to which he was pleading guilty was what the Commonwealth "said he did." Good acknowledged the amount of restitution and stated he understood the nature of the charges. At sentencing, the court did not order a lump sum of restitution but ordered Good to pay a specific amount to each of 34 victims – the lowest amount being three cents[25]

_____

[24] We note that while Good argues the grading of the theft indicates the amount involved on each count was less than $2,000, the grading statute he cites provides the amount involved was less than $200. *See* 18 Pa.C.S.A. § 3903.

[25] *See* N.T., 4/26/21, at 29.

– and Good argued at sentencing that he paid restitution so that "he could make the victims whole."

Therefore, although Good pleaded guilty only to five counts graded as a misdemeanor, thereby decreasing the grading of his counts and number of charges, and his overall sentencing exposure, there is nothing on the record to suggest the amount of restitution was ever divorced from the underlying facts to which Good pleaded guilty. The court did not abuse its discretion when considering the amount Good underpaid his employees to be $65,000, the amount listed as restitution prior to and during Good's guilty plea.

Good next argues the court admitted that it had relied on the grand jury testimony of a DLI employee, Dan Gioiosa, regarding sanctions DLI had imposed on Allied Mechanical, Good's previous employer. Good quotes a portion of the trial court opinion stating that Good

> was personally told by Mr. Gioiosa that changing the classification of workers in order to manipulate the cost of the project for bids was illegal and constituted theft. Despite [Good]'s involvement with Allied Mechanical's misconduct, [Good] continued to withhold his employee[s'] wages after they had earned them. [Good] was given the chance to follow the law, but he chose not to. Therefore, it was clear to this Court, that without a sentence of incarceration, [Good] was likely to reoffend.

Appellants' Br. at 71 (quoting Trial Ct. Op. at 7). Good argues the court's summary of the testimony is inaccurate, as Gioiosa never characterized the wage underpayment as "theft." He further argues the testimony was hearsay and that the court deprived Good of his right to confrontation when

considering it for purposes of sentencing. **See** Appellants' Br. at 72; Appellants' Reply Br. at 33.

As with Good's restitution issue, we find the court did not abuse its discretion in considering facts that were made part of the record and thereby incorporated into Good's guilty plea. Good accepted the Commonwealth's allegations when he pleaded guilty, and those allegations included that Gioiosa had warned Good that his conduct constituted wage underpayment. Although Gioiosa did not use the word "theft" when describing Good's conduct, we find the difference to have no bearing, as the thrust of the court's statement was that Good had been made aware that by using predetermined ratios he was underpaying his employees pursuant to his obligation under the PWA, that his company had been sanctioned, and that he had engaged again in similar conduct.

In addition, hearsay is routinely offered at sentencing hearings. **See Commonwealth v. Medley**, 725 A.2d 1225, 1230 (Pa.Super. 1999). While a defendant must have an opportunity to examine the hearsay and dispute its accuracy, **Commonwealth v. Berrigan**, 535 A.2d 91, 106 (Pa.Super. 1987) (*en banc*), Gioiosa's grand jury testimony was discussed at the preliminary hearing by Trooper Walters, whom Good cross-examined. The Commonwealth also introduced into evidence the corroborating adjudication by DLI, which discussed Gioiosa's encounter with Good. We do not find the court abused its discretion by considering Gioiosa's grand jury testimony.

Next, Good argues the court referenced the false statement charges that had been dismissed as part of his plea deal. Appellants' Br. at 69.

In its nine-page opinion, the court mentioned the charges once: "Good is also accused of giving false testimony to the Grand Jury." Trial Ct. Op. at 1. We do not find this evinces an abuse of discretion. The court was giving background history of the case, not discussing the reasons for its sentence.

### 4. Excessiveness

Good argues that considering the mitigating factors and, in his view, the low gravity of the crime, imposing consecutive sentences on all five counts, resulting in an aggregate sentence exceeding the aggravated range, was unreasonable and excessive. "Under 42 Pa.C.S.A. § 9721, the court has discretion to impose sentences consecutively or concurrently[.]" ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa.Super. 2010).

Here, the court imposed an aggregate sentence just shy of four months to two years' incarceration. We do not find this to be so excessive as to constitute an abuse of discretion, given the facts of the case. ***See*** 18 Pa.C.S.A. § 1104.

### 5. Bias and Prejudice

Finally, Good argues his sentence was not individualized and was the result of bias and prejudice. Good argues the court rejected the first two plea deals because they did not involve jail time. He points to the court's statements that the court believed a sentence of incarceration would be necessary to "send a message" to other contractors, and that white collar

crimes are one of its "pet peeves." He also highlights the court's statements that it was treating Good's case in line with the way the court has "dealt with white-collar crimes cases," and that it has "always been very tough on white collar criminals." He contends the court's statements exhibited bias and that the court abused its discretion in determining a sentence of incarceration was warranted prior to the sentencing hearing and before having full consideration of Good's individual circumstances and character. Appellants' Br. at 77.

A court imposing sentence must "[assess] the case in an impartial manner, free of personal bias or interest in the outcome." ***Commonwealth v. Williams***, 69 A.3d 735, 744 (Pa.Super. 2013) (cleaned up). The court must also impose a sentence individualized to the offender, rather than one that is pre-determined and based only on the crime. ***See Luketic***, 162 A.3d at 1160. The mere "appearance of prejudice is sufficient to warrant the grant of new proceedings." ***Williams***, 69 A.3d at 744 (citation omitted). The court's tone must be one of "dispassionate reflection" rather than advocacy. ***Id.***

For example, in ***Williams***, we found evidence of bias in the court's "focus on repairing or correcting the perceived mistakes of prior judges with whom the trial judge disagreed;" "its excessive focus on the [a]ppellant's victimization of the Catholic Church and attribution of motives to [the a]ppellant that were unsupported by the record"; "the use or misuse of pseudo-medical terminology to describe [a]ppellant's mental health that was unsupported by the record"; and "the improper consideration of [a]ppellant's gender and the court's subjective comparison of [a]ppellant to other members

of [a]ppellant's gender that were sentenced in his courtroom." *Id.* at 749. Among other things, the court had referred to the appellant as a pathological liar, a sociopath, and a "violent, thuggish female." *Id.* at 749.

In *Luketic*, 162 A.3d at 1152, we found the court abused its discretion and failed to impose an individualized sentence when it stated, prior to the sentencing hearing, that it would be sentencing the defendant to a period of incarceration, and then at the sentencing hearing, asked the defendant to convince the court that incarceration would not be appropriate. The court had also stated it was imposing a sentence of incarceration because it had done so on a co-defendant, as the two were "opposite sides of the same coin" in the heroin epidemic. *Id.* at 1164-65. The court had failed to order a PSI or gather sufficient relevant information regarding the defendant's history and background. *Id.* at 1165. The Supreme Court similarly found the court had failed to impose individualized sentences in *Commonwealth v. Martin*, 351 A.2d 650, 651 (Pa. 1976), and *Commonwealth v. Knighton*, 415 A.2d 9, 11-12 (Pa. 1980), in which the trial courts imposed sentences they had determined in advance of the sentencing hearing and through consultation with other judges. *Id.* at 1162.

Conversely, in *Walls*, the Supreme Court considered whether the sentencing court's statements indicated that it "had an agenda against sex offenders that involved imposing the maximum sentences permitted by law regardless of the individual circumstances of the case." 926 A.2d at 965. The court found that "while the sentencing court unfortunately cast doubt upon

the individualized nature of [the defendant's] sentence by making certain general comments about those who sexually victimize young children, when viewed as a whole, the sentencing court made a sentencing decision that was individualized[.]" *Id.* at 966.

Here, unlike in **Williams** or **Luketic**, we do not find the court's statements exhibited bias. Although the court said that it is "tough" on white-collar criminals, the court stated at the same conference that it had no grudge against Good as an individual. The court's tone was consistently one of dispassionate reflection.

Nor do we find the court's statements indicate that it had decided from the outset that it would sentence Good to incarceration. Although the court stated it rejected the first two plea deals because a term of incarceration would be warranted to "send a message" to other offenders, the court also explained that it had not predetermined that it would impose a sentence of incarceration. Instead, it said it was looking at the total allegations and charges against Good and Goodco and contemplating a proportional sentence given a "total admission of guilt." The court rejected the plea deals because the sentences were facially disproportionate. As the court explained, it did not discuss what length of incarceration would be appropriate for any given conviction.

The record also reflects that the court considered the mitigating evidence. After considering the information presented at sentencing, the court stated its decision to sentence Good in the standard range, despite its belief that the aggravated range might also have been appropriate. Thus, as in

**Walls**, the record reflects the court imposed an individualized sentence, and not a predetermined sentence based on the crime alone.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2023